BERNARD GARVEY, Plaintiff-Appellee, *v.* LEHMAN E. PARRISH *et al.,* Defendants.—(GATEWAY NATIONAL BANK *et al.,* Garnishees; LEHMAN E. PARRISH, Defendant-Appellant; LINDA M. STOREY *et al.,* Appellants.)

First District (3rd Division)    No. 79-1123

Opinion filed May 7, 1980.

L. Louis Karton, Ltd., and Irving D. Bloom, both of Chicago, for appellants.

Baum, Glick & Wertheimer, Associates, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This was a garnishment suit brought by plaintiff, Bernard Garvey, against garnishees Gateway National Bank and Harris Trust and Savings Bank, as trustee, to reach the assets of Lehman E. Parrish in order to

enforce a judgment which had been entered against Parrish and two other parties for $39,612.48. After conducting hearings without a jury, the trial court entered judgment directing Gateway to pay plaintiff $4,633.81 from a certain account. The court also ordered Linda M. Storey to execute an assignment of the beneficial interest in a Harris land trust to the sheriff to be sold for plaintiff's benefit.

Gateway filed an amended garnishment answer indicating that it had $7,533.81 in an account entitled "Parrish Realty Escrow Account." Gateway claimed a $2,900 set off for a cashier's check issued on June 8, 1978, leaving a balance of $4,633.81. On September 6, 1978, the court conducted a hearing to determine ownership of the funds in the account.

Storey testified that on June 9, 1978, she purchased property at 10701 South Champlain Avenue in Chicago from Leonard J. Panfil. She paid $15,000, using her own funds. The closing was held at Harris, where the property was placed in trust. At the closing, Storey was represented by Mr. Bloom, Parrish's attorney in the present proceedings. In purchasing the property, she used the $2,900 cashier's check issued by Gateway, payable to her order and bearing her endorsement. Parrish, her real estate broker, purchased this check with $3,100 cash which she had given him on June 8, for which he issued a receipt. Storey received the $200 difference after the closing.

On cross-examination, Storey stated that she borrowed the $3,100; that Parrish arranged the financing; that she signed a promissory note for the loan; that she did not know the source or terms of the loan; and that she had not yet repaid the loan. She subsequently testified that the $3,100 loan was given to her in cash by Parrish. The remaining $11,900 of the purchase price came from a loan from William McGee, whom she met for the first time just before her testimony in the present matter. Parrish also arranged for that loan. Storey signed a note for this loan but had not made any payments on it and did not know the interest rate. She believed that the loan was to be paid from income derived from the property. Storey at first testified that she retained a $666.44 refund from Prorok Realty Co., but subsequently stated that she gave the refund to Parrish. After stating that she did not know what a land trust was, Storey claimed that she owned the building and collected the rent. Parrish did not receive a real estate commission from the transaction.

Subsequent to her purchase, Storey applied to Seaway National Bank for a $22,500 mortgage on the property. She was accompanied by Mr. Stark, sent by Parrish, who informed the bank that she was buying the property for $32,500. The only real estate sales contract signed by Storey recited this latter amount.

Parrish, a licensed real estate broker, testified that Storey was the owner and beneficiary of the Champlain property. Parrish executed the

contract of purchase as her agent. Parrish testified that on June 8, 1978, Storey gave him $3,100 in cash, $3,000 of which was borrowed in cash from McGee in return for a short-term note. After learning that $2,900 would be required at the closing, Parrish purchased the cashier's check drawn on McGee's funds in the "escrow account." On the day after the closing, Parrish deposited Storey's cash into the escrow account to replace McGee's funds. The purchase was completed with $100 provided by Storey and additional funds loaned by McGee. The loan from McGee was to be repaid through a future sale or refinancing of the property.

Parrish stated that the funds in the escrow account belonged to his customers. In March 1978, he placed $10,000 from McGee in the account. He repaid McGee $4,900 and $5,100 of McGee's money remained in the account. McGee originally gave him $10,000 to purchase a condominium, but the transaction was not completed. Parrish did not have any records to show the total amount of money received from McGee or other customers. At times Parrish would designate who or what the money was used for on the face of the checks drawn on the account.

William McGee testified that he lent Storey $15,000 paid by checks made payable to Parrish. McGee received a promissory note for the loan which, although due, had not yet been repaid. He thought Parrish was going to secure the loan. McGee stated that he gave Parrish $10,000 for a real estate transaction which fell through. He had been repaid $4,900. McGee later testified that he gave Parrish the $10,000 to hold for the purpose of investment on McGee's behalf. McGee also stated he did not care how Parrish used the money, provided McGee would get his money back. Parrish did not have to account to McGee as to how the money in the account was used.

Following that proceeding, but prior to the court's decision, plaintiff, on September 18, 1978, filed a petition. It alleged that in purchasing the property in trust, Storey, the named beneficiary, used Parrish's funds and was acting solely as Parrish's nominee and agent. It also alleged that Parrish was the true owner of the beneficial interest. Plaintiff asked that the beneficial interest be transferred to him in partial satisfaction of the judgment, and that summons issue against Storey serving her with the petition. On October 13, 1978, plaintiff filed a petition alleging, in part, that Storey had been served with a citation. On November 27, 1978, the trial court declared that it viewed the funds involved in the garnishment contest as related to the subject real estate purchase. Storey and Parrish then furnished additional testimony regarding the real estate transaction.

Storey, called as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), testified that Bloom, her attorney at the closing, was recommended by Parrish. She met Bloom for the first time at the closing, and she did not pay him a fee for his representation.

The land trust agreement indicating that she owned 100% of the beneficial interest was shown to Storey as she testified. Upon examining the document, Storey stated she did not know why Parrish was listed as the beneficiary in the event of her death or why he was given the power of direction. She suggested that Parrish may have been afraid that he would not realize his commission if she later sold the property. Also introduced was the promissory note, due on August 26, 1978, in which Storey agreed to pay $17,250 for the $15,000 loan. Storey first became aware in July 1978 of having signed the note while she was in the process of obtaining a remortgage. She did not know she was delinquent on the note, and no one had demanded repayment. Storey signed all the documents at the closing at the direction of Bloom and Parrish.

Parrish testified that he asked Bloom to prepare the trust agreement naming him successor beneficiary and giving him the power of direction in order to protect McGee. He subsequently testified that it was to protect "everybody." Parrish indicated that the $664 refund was not applied to the note, stating, "I didn't elect to do it and I was in control of it * * *." Parrish testified that there was no writing between McGee and himself other than a receipt for $10,000. Parrish stated that as a practical matter, he was a dual agent for Storey and McGee.

On January 10, 1979, having considered the evidence and arguments of counsel, the trial court rendered its decision. It reasoned that Parrish was the man "behind the scenes and the true owner and mover of everything that was involved in here." The court held that the funds at Gateway were not held pursuant to any escrow agreement, but were the sole property of Parrish. The court found that the funds were subject to garnishment and directed Gateway to pay plaintiff $4,633.81. The court concluded that Storey used Parrish's funds and acted as his nominee and agent in the real estate transaction; that Parrish was the true owner of the beneficial interest; and that Storey was designated beneficiary to defraud Parrish's creditors. Accordingly, the court directed Storey to execute an assignment of the beneficial interest to the sheriff to be sold for plaintiff's benefit. Upon Storey's failure to comply, the court executed the assignment of the beneficial interest. Parrish, Storey, and McGee appeal.

Appellants contend that the trial court erred in entering judgments affecting the property of Storey and McGee without requiring that they be made parties to the proceedings. They charge that Storey and McGee were necessary parties over whom the court did not acquire jurisdiction, and therefore ordering the sale of the beneficial interest denies them their day in court and takes their property without due process of law.

■■ Where it appears that property involved in a garnishment action is subject to the claim of a third person, notice to that person is mandatory, and the court must permit the other person to appear and maintain his

right. (*B. J. Lind & Co. v. Diacou* (1971), 3 Ill. App. 3d 299, 278 N.E.2d 526.) Section 73 of the Civil Practice Act authorizes a judgment creditor to institute supplementary proceedings to examine the judgment debtor or any other person both to discover nonexempt assets of the judgment debtor and to apply such nonexempt assets toward payment of the judgment debt. (Ill. Rev. Stat. 1977, ch. 110, par. 73; see *Seno v. Franke* (1960), 20 Ill. 2d 70, 169 N.E.2d 335.) Under section 73, the court may compel any third party cited to deliver up any assets discovered or to execute an assignment in the same manner as a court could do in any proceeding by a judgment creditor to enforce payment of a judgment or in aid of execution. Ill. Rev. Stat. 1977, ch. 110, par. 73(2)(c, e).

■■ Section 73 affords protection to third persons by providing as follows:

> "(5) If it appears that any property, chose in action, credit or effect discovered, or any interest therein, is claimed by any person other than the judgment debtor, the court shall, as in garnishment proceedings, permit or require the claimant to appear and maintain his right. The rights of the person cited (other than the judgment debtor) and the rights of any adverse claimant shall be asserted and determined pursuant to the law relating to garnishment proceedings." (Ill. Rev. Stat. 1977, ch. 110, par. 73(5).)

In sum, the procedures governing supplementary proceedings contemplate that a third party claiming an interest in the subject property must be given a full opportunity to present and maintain his claim. *Meggison v. Stevens* (1974), 21 Ill. App. 3d 505, 316 N.E.2d 297.

In support of their contention that Storey's property was taken without due process of law, appellants argue that Storey was a necessary party to the proceedings; that the record does not reflect that she was served with summons and a copy of plaintiff's petition; that no attorney filed an appearance on her behalf; and that she testified only as a witness. In *Seno v. Franke* (1960), 20 Ill. 2d 70, 169 N.E.2d 335, a third party who had been ordered to execute an assignment of the beneficial interest in a land trust contended that he was denied due process in section 73 supplementary proceedings because he had not been served with a citation, but appeared in response to a subpoena, and there were no formal proceedings. The court held that while the record did not show a return of service, he nevertheless had been made a party to the supplementary proceedings. The court noted that the party had appeared in person and by counsel; and that at no time did he object to the court's jurisdiction over him or raise any procedural right not granted to him. The court concluded that the fundamental requirements of due process had been observed.

Similarly, Storey had sufficient notice and opportunity to be heard and to maintain her claim to the beneficial interest in the land trust. On

September 18, 1978, the court ordered that a citation be served on Storey. On October 13, 1978, plaintiff filed a petition alleging that Storey had been served. At the hearing, Mr. Bloom, Storey's attorney at the closing, stated that Storey had been served with the citation. While Bloom did not file an appearance on Storey's behalf, no objection or challenge was made to the constant references throughout the hearing that he represented Storey. While the record does not show a return of service, we conclude that Storey had notice of her status as a citation respondent and that she was made a party to the supplementary proceeding. Furthermore, Storey was afforded an opportunity to establish fully her defense to plaintiff's petition. Not only did she testify at both hearings, but Parrish testified on her behalf. Moreover, Storey was granted a continuance to produce a witness on her behalf. She was in no way denied her right to adduce evidence to establish her claim. We conclude that Storey was subject to the court's jurisdiction, and that she was afforded adequate notice and opportunity to be heard.

■■ Appellants also contend that McGee was a necessary party because he lent Storey the funds used in the real estate purchase. They point out that the record does not show that McGee was served; that no appearance was filed on his behalf; and that when McGee requested a lawyer at the garnishment contest, the court informed him he was only there to answer questions as a witness.

We do not believe that McGee had any interest in the property which was the subject matter of the supplementary proceeding. McGee testified that he furnished funds for the real estate transaction in checks payable to Parrish, and that, for this loan, Storey gave him a promissory note which has not been repaid. Yet McGee never took any mortgage, collateral or security in the land trust property. Nor did he assert any claim to the property during the proceedings. We therefore conclude that neither Storey nor McGee were deprived of property without due process of law.

Appellants also contend that the trial court's findings concerning the escrow funds and beneficial interest are contrary to the manifest weight of the evidence and contrary to law.

■■ The garnishor has the burden of showing that the garnishee holds property belonging to the judgment debtor. (*Liberty Leasing Co. v. Crown Ice Machine Leasing Co.* (1974), 19 Ill. App. 3d 27, 311 N.E.2d 250.) Garnishment can reach only a judgment debtor's property, not property which he holds in trust for others. (*Morris v. Carroso* (1937), 292 Ill. App. 620, 11 N.E.2d 816.) Appellants argue that plaintiff has not produced evidence to refute their testimony that the bank funds and beneficial interest belonged to persons other than Parrish.

Appellants first challenge the trial court's ruling that the funds in the "Parrish Realty Escrow Account" were not held subject to any escrow agreement and thus were the property of Parrish rather than any third

party. They correctly assert that Parrish, as a licensed real estate broker, was required to maintain a special account, separate and apart from his own personal or business accounts. He was required to deposit in the escrow account "all moneys belonging to others entrusted to him while acting as a real estate broker, or as escrow agent, or as the temporary custodian of the funds * * * until the transaction involved is consummated or terminated * * *." (Ill. Rev. Stat. 1977, ch. 111, par. 5732(e)(8).) They urge that the "Parrish Realty Escrow Account" was such a special escrow account in which Parrish held funds of customers. Plaintiff counters that the nature of the account and the manner in which it was used by Parrish demonstrates that it was not, in fact, a true escrow account, and that the trial court correctly found it was Parrish's money. We agree with plaintiff.

■■ This court had defined an escrow as "a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor or obligor, or his agent with a stranger or third party, to be kept by the depository until the performance of a condition or the happening of a certain event and then to be delivered over to the grantee, promisee or obligee." (*Rinehart v. Rinehart* (1957), 14 Ill. App. 2d 116, 123, 143 N.E.2d 398.) No such escrow agreement existed between Parrish and the bank or any of the third parties involved here. Gateway did not operate subject to any agreement establishing conditions on distribution of funds in this account. Nor did Gateway have notice of any restrictions on the use of the funds. Rather, the signature card indicated that Gateway was the depository for an ordinary demand account. Parrish could and did recall funds freely. No third parties intervened to claim an ownership interest in the funds. More importantly, the manner in which Parrish used the account was significant. He maintained no records designating the amounts or sources of deposited funds. The account balance reflected that the bank records varied from McGee's estimate of how much of his money remained in the account. Parrish alone made all deposits and withdrawals and numerous checks were drawn payable to cash. While Parrish sometimes designated for what person or purpose the money was used, he did not list on these checks any restrictions as to their use. Moreover, McGee, the alleged owner of the funds, admitted that Parrish had wide latitude to deal with the funds; that Parrish need not account to him for his use of the funds; and that Parrish could use the funds for his own benefit provided they were returned. Upon reviewing all the evidence, we hold that the trial court correctly found that the funds in the Gateway account were the sole property of Parrish and subject to garnishment.

Appellants finally attack the trial court's holdings that Parrish was the true owner of the beneficial interest of the land trust and that Storey was

designated the beneficiary to defraud creditors. At the proceedings, Storey maintained that she owned and managed the land trust property, and that she purchased it with her own funds. Yet she also testified that she did not know what a land trust was, and that she did not know why Parrish was the beneficiary in the event of her death or why he had the power of direction. She signed many papers at the closing because Bloom and Parrish so directed, and she turned over all documents, including refunds, to Parrish. She did not realize she had signed a promissory note for a loan until more than a month after it was executed, and she was unaware she was delinquent on the loan. She was uncertain of the source or terms of the $3,100 loan. After the closing, Storey signed a contract purporting to buy the property she allegedly owned. Her testimony clearly demonstrated her minimal involvement with the real estate purchase.

In contrast, Parrish disclosed in his testimony that he exercised "absolute" control over the entire transaction. Parrish stated that he acted as dual agent for both the purported purchaser (Storey) and lender (McGee), and that he obtained all the necessary financing. It was Parrish who elected not to apply Storey's refund check to the loan from McGee. When asked why he arranged to have himself named successor beneficiary and given the power of direction, Parrish stated, "I had to protect everybody. Nobody could move without [coming to] me." Although Parrish stated that he did not contribute any of his own funds to the real estate purchase, he structured the financing arrangement and actively participated in the actual transfer of funds.

Moreover, the usual indicia of a real estate transaction are missing. No written agency contract between Parrish and Storey was produced. Nor was there any written agreement pertaining to the funds McGee remitted to Parrish. Little or no money came from Storey's own financial resources. Although Parrish said Storey contributed $100, she stated the purchase price was paid solely from loans. There was no mortgage. The trial court was asked to believe that McGee would loan money to Storey, whom he had never met, without getting security for the loan. The trial court was justified in concluding that Parrish was the man "behind the scenes" in the real estate purchase and was the true owner of the beneficial interest. The trial court's holdings were not contrary to the manifest weight of the evidence.

Accordingly, the orders of the circuit court of Cook County directing Gateway to pay the balance of its account to plaintiff and transferring Storey's interest in the land trust to the sheriff so that it might be sold for plaintiff's benefit are affirmed.

Orders affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.