WILLIAM A. BLOINK III, Plaintiff-Appellee, v. HOWARD OLSON, Indiv. and d/b/a The Horizon Group, Defendants (Gary-Wheaton Bank, Citation Respondent; The People *ex rel.* Roland W. Burris, Attorney General of Illinois, Intervenor-Appellant).

Second District   No. 2—93—0527

Opinion filed July 29, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellant.

Thomas E. Sullivan, of Huck & Sullivan, of Wheaton, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The State appeals from the order of the circuit court of Du Page County which directed the citation respondent, Gary-Wheaton Bank (Bank), to turn over $58,439.11 from the bank account of defendants, Howard Olson and the Horizon Group, to plaintiff, William A. Bloink III. On appeal, the State claims that the trial court (1) erroneously concluded that the service of a citation to discover assets created a lien in favor of plaintiff; (2) did not provide the State with a sufficient opportunity to assert its claim against the bank account funds; and (3) erred by ordering the Bank to turn over the funds in the account when, in a separate and pending action, the circuit court of Cook County had previously ordered the Bank not to transfer those funds.

Plaintiff filed a complaint against defendant, Howard Olson, individually and d/b/a the Horizon Group (Horizon). The complaint alleged that defendant was in the business of providing brokerage services. On April 10, 1991, plaintiff executed a conditional offer to purchase the dental practice of Dr. Russel Fu. In connection with this offer, plaintiff tendered to Horizon $40,000 in earnest money. Horizon was to serve as the escrowee in this transaction. Plaintiff and Fu were unable to reach an agreement, and the sale was never executed.

Plaintiff informed Horizon of the failed negotiations and requested a refund of the earnest money. Despite repeated demands, Horizon refused to refund the earnest money. The complaint further alleged that Horizon commingled the funds tendered as earnest money with its own funds and used the earnest money for its own benefit. The theories that plaintiff advanced in support of recovery were breach of fiduciary duty, conversion, fraud, and consumer fraud. Plaintiff sought $40,000 in compensatory damages, $100,000 in punitive damages, and an order enjoining Horizon and its agents from transferring, assigning, dissipating, or encumbering the funds.

On November 27, 1991, the trial court issued a preliminary injunction ordering Horizon to create an earnest money escrow account and deposit into it $40,000. Olson filed for protection under

the Bankruptcy Code (11 U.S.C.A. § 101 *et seq.* (West 1993)), and on April 29, 1992, in accordance with the automatic stay provisions of the Bankruptcy Code (11 U.S.C.A. § 362(a)(1) (West 1993)), the trial court placed the case on inactive status. On January 13, 1993, after the bankruptcy court dismissed Olson's bankruptcy petition, the court removed the case from inactive status.

On April 8, 1993, plaintiff filed citations to discover assets directed against Horizon and the Bank. Both citations incorrectly referred to the November 27, 1991, preliminary injunction as a final judgment which remained unsatisfied. On that same date, the trial court ordered the Bank to hold and retain all of Horizon's property in the Bank's possession, including but not limited to $58,439.11 that Horizon had deposited in a checking account at the Bank.

On April 21, 1993, the trial court entered a judgment in plaintiff's favor in the amount of $58,439.11 and granted plaintiff leave to commence supplementary proceedings against the Bank. The order stated that the court was entering the judgment by the consent of the parties. Also on this date, plaintiff notified the State of the pending supplementary proceedings and of plaintiff's claim against the checking account funds and moved for a turnover order.

On April 28, 1993, plaintiff filed another citation against the Bank. This citation referred to the April 21 judgment. At a hearing held on this same date, the State appeared for the purpose of objecting to the turnover of the disputed funds. The State produced evidence that it commenced in the circuit court of Cook County an action alleging violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) by Horizon. The Bank was listed as a nominal defendant in this action.

On June 17, 1992, the Cook County court issued a temporary restraining order that prevented the bank from disposing of, transferring, or otherwise alienating the funds in Horizon's checking account. This order remained in effect until June 26, 1992. On November 2, 1992, the Cook County circuit court entered a summary judgment in favor of the State and against Horizon. In its November 2 order, the Cook County court directed that Horizon's checking account at the Bank remain frozen "until further order of Court." The court also reserved ruling on the issue of damages. An employee of the Bank testified that the Bank received via mail a copy of each of the above-mentioned orders. The employee also testified that, to her knowledge, the Bank was never served with a summons requiring it to appear in the Cook County proceedings. The Cook County court scheduled a hearing for May 7, 1993, at which time it would distribute the frozen funds to the rightful claimants.

The trial court concluded that whether the Bank received service in the Cook County proceeding was not dispositive. It found that, notwithstanding the freeze the Cook County court placed on Horizon's account, plaintiff's claim against the funds was superior to the State's. Accordingly, the trial court ordered the Bank to turn over to plaintiff the funds in dispute.

On April 29, the State filed an emergency motion for leave to intervene and an emergency motion to reconsider. The trial court allowed the State to intervene and found that a perfected lien against the checking account funds and in favor of plaintiff attached upon the service of the citation to discover assets. It also found in the alternative that the lien attached, at the latest, upon the trial court's issuance of the turnover order. According to the trial court, the State's claim to the funds was inchoate because the State had not yet obtained a similar final adjudication of damages in the Cook County proceeding. Therefore, plaintiff's claim to the funds was superior to the State's claim.

The trial court also found that the freeze orders that the Cook County court entered did not affect the rights of third parties who have a lawful claim against the funds and are not parties to the Cook County proceeding. The State timely appealed, and the trial court stayed the enforcement of its order pending this appeal (see 134 Ill. 2d R. 305(a)).

●1 The State first takes issue with the trial court's conclusion that the service of the citation to discover assets against the Bank created a lien in favor of plaintiff and against the funds in Horizon's bank account. A supplementary proceeding under section 2—1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1402 (West 1992)), including a citation to discover assets, is a method by which a judgment creditor may proceed against the judgment debtor or third parties to discover and recover the judgment debtor's assets for the purpose of applying the property in satisfaction of the judgment. (*Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.* (1992), 235 Ill. App. 3d 88, 93.) Such a proceeding is commenced by the court clerk's service of the citation. 735 ILCS 5/2—1402(a) (West 1992).

The issue that the State raises has been the subject of considerable disagreement. Both the Illinois and the Federal courts are split on this issue. Compare *Water Technologies Corp. v. Calco, Ltd.* (N.D. Ill. 1990), 132 F.R.D. 670, 677 (mere service of citation to discover assets does not create a lien); *In re Jaffe* (N.D. Ill. 1990), 111 Bankr. 701, 709 (same); *Kaiser-Ducett Corp. v. Chicago-Joliet Livestock Marketing Center, Inc.* (1980), 86 Ill. App. 3d 216, 219 (judgment does not become a lien against personal property unless a writ of execution is delivered

to the sheriff to be "properly executed"), with *Farm Credit Bank v. Lucas* (C.D. Ill. 1993), 152 Bankr. 244, 246-47, *rev'd on other grounds Appeal of Swartz* (7th Cir. 1994), 18 F.3d 413 (citation to discover assets creates a perfected lien against the property of the judgment debtor); *In re Lifchitz* (N.D. Ill. 1991), 131 Bankr. 827, 833 (service of citation to discover assets creates an unperfected lien, and the lien becomes perfected upon the entry of the turnover order); *Bank of Broadway v. Goldblatt* (1968), 103 Ill. App. 2d 243, 247 (creditor may obtain a lien against a beneficial land trust by the service of a citation to discover assets).

This court has issued a ruling similar to that in *Goldblatt*. In *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, we interpreted *Levine v. Pascal* (1968), 94 Ill. App. 2d 43, as holding that "a creditor who proceeds by a citation to discover assets is a lien creditor." (*Metcoff*, 23 Ill. App. 3d at 611.) We held that, "[b]y availing themselves of the remedy of citation proceedings, the judgment creditors had established their claim to the [property in dispute.]" (*Metcoff*, 23 Ill. App. 3d at 612.) Courts and commentators have criticized *Metcoff* and *Goldblatt* as resting on a faulty interpretation of *Levine*. See *Jaffe*, 111 Bankr. at 705; Stepnowski, *Less Than Perfected: Uncertainty in Illinois Judgment Lien Law*, 13 N. Ill. U.L. Rev. 33, 46 (1992).

Despite the criticism of *Metcoff*, *Metcoff* remains a viable precedent. *Metcoff* now seems to advance the better view in light of the recent amendment to section 2—1402. The amendment added section 2—1402(l), which states in pertinent part:

> "The judgement or balance due on the judgement becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgement debtor as follows:
> ***
> (2) When the citation is directed against a third party, upon all personal property belonging to the judgement debtor in the possession or control of the third party ***.
> ***
> *This Amendatory Act of 1993 is a declaration of existing law.*"

(Emphasis added.) 735 ILCS 5/2—1402(l) (West Supp. 1993).

Although this provision did not become effective until after the proceedings in the trial court concluded, it is instructive. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. (*Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 181.) It

is proper for a court to consider a subsequent amendment to a statute to determine the legislative intent behind and the meaning of the statute prior to the amendment. (*Creel v. Industrial Comm'n* (1973), 54 Ill. 2d 580, 584; *Warren v. Borger* (1989), 184 Ill. App. 3d 38, 44.) Although an amendment generally is presumed to change the law as it formerly existed, this presumption of change is rebutted where the circumstances suggest otherwise. *Hession v. Department of Public Aid* (1989), 129 Ill. 2d 535, 543.

●2 The final sentence of section 2—1402(l) clearly reveals that the legislature intended this section to serve as a clarification of existing law and of its intent when it originally enacted section 2—1402. We find this amendment to be a strong indication of the original intent behind section 2—1402 and hold that the trial court correctly concluded that a lien against the checking account funds came into existence upon the service of the citation upon the Bank. The State had secured only a judgment regarding liability and had not yet obtained a money judgment against Horizon. Therefore, the State could not claim to have a superior interest in the funds.

The State asks us to adopt an opposite holding by relying on our statement in *Elmhurst Auto Parts* that "the filing of a citation to discover assets alone may not explicitly create a lien on that property of the debtor in the hands of a third party." (*Elmhurst Auto Parts*, 235 Ill. App. 3d at 93.) The issue whether a citation to discover assets creates a lien was not before us in *Elmhurst Auto Parts*. Therefore, the *dictum* in *Elmhurst Auto Parts* does not shed any light on the issue now before us.

●3 The State also complains that the proceedings leading to the turnover order were deficient and that the cause must be remanded for further proceedings. In particular, the State argues that the trial court did not give it a sufficient opportunity to assert its right to the checking account funds.

Initially, we note that the State never complained in the trial court about the procedure that led to the turnover order. Generally, issues raised for the first time on appeal are waived. (*Reda v. Otero* (1993), 251 Ill. App. 3d 666, 674.) Therefore, the State has waived this issue.

Regardless of the waiver issue, the State's contention is without merit. Section 2—1402(e) provides:

"If it appears that any property *** is claimed by any person other than the judgment debtor, the court shall, as in garnishment proceedings, permit or require the claimant to appear and maintain his or her right. The rights of the person cited (other than the judgment debtor) and the rights of any adverse claimant

shall be asserted and determined pursuant to the law relating to garnishment proceedings." (735 ILCS 5/2—1402(e) (West 1992).) Section 12—710 of the Code, which relates to garnishment proceedings, provides that the adverse claimant's rights "shall be tried and determined with the other issues in the garnishment action." 735 ILCS 5/12—710(b) (West 1992).

The State claims that, under these sections of the Code, it should have been permitted to file a written claim and that the matter should have been set for trial at a later date. The State relies on *Harmon v. LaDar Corp.* (1990), 200 Ill. App. 3d 79, in support of this contention. There, we stated that, ordinarily, in supplemental proceedings, if the judgment creditor claims entitlement to the assets of a third party and the third party contests the claim, a trial must be held to ascertain the parties' rights to the disputed property. *Harmon*, 200 Ill. App. 3d at 83.

The rationale of *Harmon* applies with equal force when a third party claims entitlement to the property of the judgment debtor. Section 2—1402(e) contemplates that such a third party be given a full opportunity to present and maintain his claim. *Garvey v. Parrish* (1980), 84 Ill. App. 3d 578, 582.

However, *Harmon* is distinguishable. There, we held that the trial court erred by basing its ruling on the motion for a turnover order solely on the arguments of counsel. (*Harmon*, 200 Ill. App. 3d at 83.) Here, the State was present at the hearing and presented the testimony of the Bank employee and documentary evidence. The trial court heard, therefore, all of the facts necessary to adjudicate the State's claim. At the hearing on the motion to reconsider, the trial court allowed the State to intervene formally, and the parties presented further argument. The facts of this case were essentially undisputed, and the court based its ruling on an interpretation of the law relating to supplementary proceedings. Nothing in the record indicates that the State was denied a full opportunity to present its claim. Accordingly, there was no violation of the requirements of either section 2—1402 or section 12—710.

•4 The State's final contention is that the trial court should not have entered the turnover order because the circuit court of Cook County had already ordered the Bank not to transfer the disputed funds until "further order of Court." The State cites *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, and *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, to support this argument.

We find both cases to be inapposite. Both deal with the principle of prior jurisdiction, which dictates that one Illinois court is not free

to ignore an action, between the same parties and the same subject matter, that is pending in another Illinois court. (*East Side Levee & Sanitary District*, 54 Ill. 2d at 445; *Lehman*, 34. Ill. 2d at 292.) The court first acquiring jurisdiction over the matter retains jurisdiction, to the exclusion of all other courts, to dispose of the entire controversy. (*In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, 895.) The purpose behind this rule is to prevent duplicative and vexatious litigation between the same parties over the same cause. (*Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.* (1981), 100 Ill. App. 3d 360, 363.) Here, the action in the Du Page County court involved neither the same parties nor the same subject as the pending proceeding in Cook County. It appears from the record that each lawsuit involved distinct transactions and different facts. Because each action involved only different causes of action against the same defendant, *East Side Levee & Sanitary District* and *Lehman* do not mandate a reversal of the trial court's judgment.

The State further relies, however, on the *East Side Levee & Sanitary District* court's statement that the Madison County court's "acceptance of jurisdiction and issuance of orders conflicting with those of the St. Clair County court was not only clearly erroneous, *** such action can only serve to diminish public respect for the judicial system of this State." (*East Side Levee & Sanitary District*, 54 Ill. 2d at 445.) According to the State, the trial court's turnover order in the instant cause similarly engenders diminished public respect for the courts of this State.

We disagree. First, we note that, unlike in *East Side Levee & Sanitary District*, the trial court did not grant any relief that could have or should have been sought from the Cook County court. (See *East Side Levee & Sanitary District*, 54 Ill. 2d at 445.) The proceeding in Cook County was essentially unrelated to the citation proceedings in Du Page County. Second, in light of plaintiff's superior interest in the disputed funds, the trial court did not err in entering an order that purportedly subjected the Bank to conflicting mandates. As we have already stated, the service of the citation to discover assets created a lien in favor of plaintiff and against the checking account funds. At the time this lien was created, the State had not yet obtained a money judgment against Horizon. Therefore, it had no property interest in the funds.

Generally, a lien that is first in time has priority over subsequent liens against the same property. (*First State Bank v. DeKalb Bank* (1988), 175 Ill. App. 3d 812, 817.) Even if the State obtained a money judgment against Horizon and initiated a citation proceeding or a similar proceeding against Horizon's property, any lien that would

arise by virtue of such proceeding would be subsequent and therefore junior to plaintiff's lien. The State would have been in no better position had the trial court deferred to the Cook County court's freeze order. The State does not cite, and our research has not uncovered, any authority which required the trial court to defer to the Cook County court's freeze order.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and BOWMAN, JJ., concur.