March 3, 1998

No. 1-97-0298

GEORGE PONTIKES, MITCHELL KREIGER, ) APPEAL FROM

and VISTA TRUST ) THE CIRCUIT COURT

) COOK COUNTY.

Plaintiffs-Judgment Creditors, )

Defendants-Appellants, )

)

v. ) 

                              )            

AVDIJA PERAZIC, OSMAN PERAZIC, BANK ) 

ONE, CHICAGO, N.A. as TRUSTEE UNDER )

TRUST NO. 10818, )

) 

Defendants-Judgment Debtors ) No. 94 CH 10932

)

)

(Roger Duba and Mercedes Benz Credit )

Corporation, )

)

Plaintiffs and Claimants- ) THE HONORABLE

Appellees). ) LESTER D. FOREMAN, 

) JUDGE PRESIDING.

) 

JUSTICE COUSINS delivered the opinion of the court:

Appellants, George Pontikes, Mitchell Kreiger and Vista Trust, were judgment creditors of debtors Avdija Perazic, Osman Perazic and Bank One, Chicago N.A., as trustee under trust No. 10818.  Appellants appeal from an order in which the trial court released three vehicles belonging to the debtors to appellee and third-party claimant Roger Duba.  On appeal, appellants contend that: (1) the trial court committed reversible error in failing to conduct an evidentiary hearing, and (2) an injunction dated January 11, 1996, prevented the judgment debtors' transfer of ownership of the vehicles to the appellee. 

BACKGROUND

On August 29, 1995, appellee Roger Duba obtained a judgment of  $1,100,00 against Avdija Perazic (Perazic) in the circuit court of Cook County.  Duba filed a citation to discover assets against Perazic, which was served on Perazic on September 6, 1995.  On December 1, 1995, appellants, George Pontikes, Mitchell Kreiger and Vista Trust, secured a judgment against Perazic in the amount of $138,000 and, thereafter, filed a citation to discover assets against Perazic on December 10, 1995.  Perazic was served with the citation later that day.  The citation was a standard form that provided in relevant part:

"YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor ***."

A hearing was held on January 11, 1996, after which the trial court ordered that Perazic pay the outstanding judgment of $138,000 on or before January 31, 1996.  In addition, the trial court prohibited Perazic from transferring or disposing of any property that could become due under the judgment to appellants until further order of the court or termination of the proceedings.

On January 31, 1996, appellants' citation proceedings were stayed when Perazic began bankruptcy proceedings in federal court.  On October 7, 1996, Perazic sold three of his vehicles to Duba.  The bills of sale for vehicles were dated October 7, 1997.  Thereafter, Perazic moved to dismiss the proceedings and, on October 10, 1996, the bankruptcy proceedings were dismissed.  Appellants filed a petition for a rule to show cause in which they argued that Perazic and Duba should be held in contempt of court because certain property belonging to Perazic had been transferred to Duba in violation of the January 11, 1996, order.  In response to the petition, Perazic stated, 
inter
 
alia
, that, while certain documents were executed prior to the order of dismissal, the vehicles were not actually delivered to Duba until after the bankruptcy court dismissed Perazic's suit on October 10, 1997.  The bankruptcy court denied appellants' petition.  

On October 28, 1996, appellants filed an execution and levy in the circuit court of Cook County on three vehicles belonging to Perazic.  Appellants also secured an order permitting the sheriff to use a locksmith to remove locks on Perazic's garage and enter the garage.  Thereafter, the sheriff took possession of Perazic's vehicles and scheduled a sale for November 15, 1996.  

Roger Duba and Mercedes Benz Credit Corporation (Mercedes) objected to the sale and claimed ownership of the vehicles.  Duba claimed that, prior to the dismissal of his petition for bankruptcy relief, he disclosed to the bankruptcy court that he and Perazic agreed that he would lend Perazic $70,000 so that Perazic could pay the administrative costs due to the court and dismiss the bankruptcy proceedings.  As a result of their agreement, Perazic was to transfer all of his assets to Duba.  Duba argued that appellants did not object when Duba informed the court of this agreement.  Duba also stated that "the Bankruptcy Court approved the transfers, including the legal transfer of the automobiles [at issue]."  Duba concluded that appellants were therefore estopped from challenging the transfer of the vehicles to Duba.

A trial of right of property was held in the circuit court on January 6, 1997.  The trial court found that Mercedes had a perfected lien on one of the vehicles, a 1994 Mercedes E 320, and that it was yet to be determined which party had a superior lien subject to Mercedes' lien.  At trial, Duba argued that appellants were estopped from asserting rights to the vehicles because Perazic had assigned Duba all of his property.  Appellants argued that the January 11, 1996, order precluded Perazic from transferring any of his property.  The trial court concluded that appellants failed to bring the circuit court's January 11, 1996, order to the bankruptcy court's attention and failed to object to the agreement between Duba and Perazic.  The trial court stated:

"I would subscribe to a principle that where a party has an obligation to speak and does not speak, that that party becomes barred from asserting what should have been asserted at the time the speaking should have taken place.  

* * * 

It seems to me that from what has been read here to me by [counsel for Duba] that the judge knew what was taking place, recalled what was taking place and said yes, that's the way it's supposed [
sic
] that Mr. Duba gets these cars because there is some logic in this.

* * *

The judge turned your client's request for a rule to show cause down and in doing, [
sic
] so seems to reaffirm that he understood that yes Duba is paying 70 thousand dollars.  He gets everything *** and he salvages whatever possible opportunities for recovery exist in all these creditors by not allowing Perazic to get a discharge.  

* * *

I think you had an obligation to bring that to the attention of the bankruptcy court. You stood by and remained silent when you had an obligation to speak."

The trial court ruled that Duba had priority in his lien on the vehicles and ordered that the vehicles be released to Duba.   

On April 21, 1997, the parties appeared before the bankruptcy court.  At the hearing, the bankruptcy court stated the following:

"I have to say, [counsel for Duba], I didn't approve any agreement between your client and the debtors respecting any transfer of property prior to the time that this was ordered.  In fact when a similar problem arose earlier, I said that there was no violation of the automatic stay in the entering into of any such agreement because it wasn't done prior to the time the bankruptcy case was dismissed.  What the transcripts reflect is what my understanding was: That if the cases were being dismissed and the creditors, all of the creditors, would be able to pursue whatever remedies they had outside of bankruptcy.  

I did nothing to prefer your client over any other creditors.  

* * *

So nobody got notice of any transfers and any opportunity to object to that, nor did I approve them.  *** [A]ll I did was dismiss the case with the understanding that the administrative expenses would be paid.  ***

If there was some property that wasn't encumbered by liens, which I didn't realize at the time, I thought all the property was encumbered by liens and I said that on the record, but if there was property that wasn't encumbered by liens, the creditors would be in a position to race to the courthouse to try to assert their rights as to that property.  Nothing in my order changed whatever rights the parties had outside of bankruptcy.

* * * 

Who has priority is absolutely a question for the state court without any interference from the bankruptcy proceeding.

* * *

The point is the order that I entered accomplished two things only:  It provided for the payment of administrative expenses, and it dismissed the bankruptcy case, leaving the creditors free to pursue their state court remedies.  I did nothing more than that.  *** Any agreement that was entered into was entered into without bankruptcy approval and has whatever effect it has under state law.  

* * *

There was an argument made that the order somehow affected the agreement to assign property of Mr. Perazic to Mr. Duba.  Judge Foreman wanted to assure himself as to whether that was the case or not.  The simple answer to that question is no, there is nothing in the order that I entered that affects the validity or enforceability of any assignment of Mr. Perazic's assets to Mr. Duba."

Appellants appeal from the January 6, 1997, order in which the trial court awarded ownership of the three vehicles to Duba.

We affirm.

ANALYSIS

I

Appellants first contend that the trial court committed reversible error in not conducting an evidentiary hearing.  Appellants contend that, at the January 6, 1996, hearing, the trial court heard only arguments of counsel and did not hear evidence, even though they stated on several occasions that the reason for the hearing was to have a full evidentiary hearing.  Appellants argue that an evidentiary hearing was required under part 2 of article XII of the Code of Civil Procedure, entitled "Trial of Right of Property" (Act)(735 ILCS 5/12-201 
et
 
seq.
 (West 1992)).  

The Act provides the procedure to be followed whenever a judgment or order of attachment for property is entered by a court and such property is claimed by any person other than the judgment debtor.  735 ILCS 5/12--201 
et
 
seq.
 (West 1992).  Section 12--202 provides:

"§ 12--202.  Trial.  The trial shall proceed without written pleadings in the same manner as in other civil cases, and may be by a jury if either party demands one." 735 ILCS 5/12--202 (West 1992).

Our review of the record indicates that on five separate occasions at the January 6, 1997, hearing, the trial court either asked appellants whether they wanted a full evidentiary hearing or asked them how they wished to proceed in general.   On each occasion, appellants either replied that they did not want a hearing or failed to request a hearing.  For example, the following colloqy occurred at trial:

"THE COURT: Now, if you think that you're in a position to prove this collusion, I'll be glad to conduct an evidentiary hearing.

MR. TAGLER: [Appellants' counsel]: Well, I believe that's what the trial of right of property requires, your Honor, first of all.

THE COURT: Very good. Are you ready for hearing now to put on some witnesses?

MR. TAGLER: Judge, as I don't believe it's our burden -- we're not plaintiffs -- the actual original plaintiffs are the defendants in the trial.  It's the burden of --

* * *

THE COURT: You want me to continue this for a hearing and bring in Judge Wedoff [bankruptcy judge]?

MR. TAGLER: No.  We have the transcript right here.

* * *

THE COURT: We spent a lot of time here.  We've been talking now for almost an hour.  What do you wish to do today?

MR. TAGLER: Well, your Honor, once again our position is once the bankruptcy was dismissed Mr. Perazic was under injunction on the citation.  That's our position.  Now apparently --

THE COURT: I'm rejecting that position.

MR. TAGLER: Okay.  Then there was no injunction.  

* * *

THE COURT: I'll give you the choice of doing one of two things.  We can put everything at rest today by my finding that there's a priority in Mr. Duba.  Or, if you still challenge that, if you feel I'm acting precipitously I'll be more than glad to conduct a full evidentiary hearing.  And you can bring Judge Wedoff in.  

* * *

THE COURT: Now again, do you want a full evidentiary hearing?  Do you think it'll serve any purpose?

MR. TAGLER: No, Judge.

THE COURT: Do you want to call Judge Wedoff and bring him in?

MR. TAGLER: Well, you have to understand it's not our burden really, Judge.  It's the claimant's burden.  But I understand your ruling."

Clearly, the trial court offered appellants ample opportunities to proceed with a full evidentiary hearing.  However, on each occasion, appellants failed to proceed or argued that it was not their burden to proceed with a hearing.  They cannot now complain that the trial court abused its discretion.   Therefore, we see no error.

II

Appellants next contend that the trial court's order of January 11, 1996, precluded Perazic from transferring ownership of his vehicles to Duba.  Duba responds that he is entitled to the vehicles because he has a superior claim.  We agree.  

At the January 6, 1997, hearing, the trial court found that Duba had a superior claim to Perazic's vehicles pursuant to the bankruptcy court's approval of the agreement between Duba and Perazic.  However, on April 21, 1997, the bankruptcy court clarified its rulings and stated that it did not approve an assignment.  The bankruptcy court concluded that the issue of priority was a "question for the state court."  Therefore, we must decide which party has a superior lien on the vehicles at issue.

Under Illinois law, a citation to discover assets is a method by which a judgment creditor may proceed against a judgment debtor or third parties to discover and recover the judgment debtor's assets for the purpose of applying the property in satisfaction of the judgment.  
Bloink v. Olson
, 265 Ill. App. 3d 711, 714, 638 N.E.2d 406 (1994).  The judgment creditor can then bring supplementary proceedings under section 2--1402 of the Code of Civil Procedure (735 ILCS 5/2--1402 (West 1993)), for the purpose of examining the judgment debtor or any other party to discover assets or income of the debtor.  735 ILCS 5/2--1402 (West 1993).  Section 2--1402 further provides that a lien is created upon service of the citation to discover assets.  735 ILCS 5/2--1402 (West 1993); 
Bloink
, 265 Ill. App. 3d at 714.  

Here, appellants received a judgment against Perazic on December 1, 1995, and served a citation to discover assets on Perazic on December 10, 1995.  However, Duba received a judgment against Perazic on August 29, 1995, and served a citation to discover assets against Perazic on or about September 6, 1995.  At the January 6, 1997, hearing, appellants conceded that Duba's citation proceedings commenced before their proceedings.  At trial, the following colloquy occurred:

"THE COURT: Does Duba have a judgment?

MR. DITKOWSKY [Counsel for Duba]: Yes.

THE COURT: When did he get his judgment?

MR. DITKOWSKY: Prior to theirs. I wrote it down there.

MR. TAGLER [Counsel for appellants]: Sometime in early 1995.

* * *

MR. TAGLER: I think it was earlier than December of '95.  Ours is December 1st.

MR. DITKOWSKY: August 29, 1995.

THE COURT: So his judgment was before yours.

MR. DITKOWSKY: That is correct.  And our citation.

THE COURT: And he had a citation going before yours.

MR. TAGLER: Correct. Correct."

We conclude that Duba served his citation to discover assets to Perazic on September 6, 1995, before appellants served their citation to Perazic on December 10, 1995.  If a lien has been perfected, the lien of the senior judgment is superior to that of a junior one.  See 
Kaiser-Ducett v. Chicago-Joliet Livestock
, 86 Ill. App. 3d 216, 218, 407 N.E.2d 1149 (1980).  Accordingly, we hold that Duba's lien was perfected before appellants' and is therefore superior.  

Affirmed.