# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2986

DEXIA CRÉDIT LOCAL,

*Plaintiff-Appellee,*

*v.*

PETER G. ROGAN, *et al.*,

*Defendants,*

and

ROBERT C. ROGAN, BRIAN P.
ROGAN, and SARA C. ROGAN,

*Intervenors-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8288—**Matthew F. Kennelly**, *Judge.*

ARGUED FEBRUARY 22, 2010—DECIDED NOVEMBER 24, 2010

Before KANNE and WILLIAMS, *Circuit Judges*, and
SPRINGMANN, *District Judge.**

---

* Of the Northern District of Indiana, sitting by designation.

SPRINGMANN, *District Judge.* After obtaining a $124 million judgment against Peter Rogan (Rogan), Dexia Crédit Local (Dexia) instituted supplemental proceedings to locate Rogan's assets and satisfy its judgment. In the course of supplemental proceedings, Dexia requested the turnover of assets held in trusts that Rogan had established, including trusts in the names of each of his three adult children, Robert, Brian, and Sara (the Rogan Children). After the district court froze the trust assets in the course of preliminary proceedings, the Rogan Children intervened in the supplementary proceedings. The case advanced to a bench trial, and the district court concluded that the trust assets actually belonged to and were controlled by Rogan. The court entered a final judgment ordering the turnover to Dexia of nearly all the assets of the Rogan Children's trusts, and terminating the Rogan Children's interests in those trusts. The Rogan Children appealed. Finding that none of the issues raised on appeal requires reversal, we affirm the decision below.

## I. BACKGROUND

### A. The Underlying Lawsuit and Judgment

This case has its genesis in the Medicare and Medicaid fraud scheme that Rogan perpetrated through Edgewater Medical Center (EMC), a hospital on Chicago's north side, from at least 1993 to 2001. *See United States v. Rogan*, 459 F. Supp. 2d 692 (N.D. Ill. 2006) (*Rogan I*), aff'd *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008). In 1989, an entity that Rogan formed and controlled pur-

chased EMC. The Rogan-controlled entity managed and administered EMC, and Rogan served as EMC's chief executive officer.

In 1994, EMC was sold to Northside Operating Company. To finance the purchase, Rogan caused the Illinois Health Facilities Authority to issue approximately $41 million in bonds. Although he had sold EMC, Rogan retained control of the hospital after the sale through a series of transactions, and he then caused EMC to enter into management contracts with two entities that he also controlled, Braddock Management, L.P. and Bainbridge Management, Inc. In 1997, Rogan arranged to refinance the bond debt, and to this end, in June 1998, he secured a letter of credit from Dexia guaranteeing EMC's repayment of the bonds. Eventually EMC's fraud was discovered, and the government stopped Medicare and Medicaid payments to EMC. This caused financial distress to EMC and, eventually, required Dexia to pay $55 million on EMC's behalf to satisfy obligations to bondholders. Dexia was unable to obtain reimbursement from EMC.

In November 2002, Dexia sued Rogan and his management company partners for fraud, conspiracy, and other torts. Dexia alleged that, during the due diligence process that led to its issuance of the letter of credit and after Dexia issued the letter of credit, Rogan defrauded Dexia by concealing that a significant portion of EMC's revenue was obtained through Medicare and Medicaid fraud. Rogan vigorously defended against the lawsuit for numerous years, but then moved to Canada

and abandoned his defense. In May 2007, Dexia obtained a default judgment against Rogan and his partner companies for $124 million.

## B. The Government's False Claims Act Suit

In 2002, the federal government instituted litigation against Rogan under the federal False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, for the submission of false Medicare and Medicaid claims for patients referred to EMC.[1] In that case, the district court found that Rogan conspired with another EMC officer and physicians to pay kickbacks and other improper benefits to the physicians in return for patient referrals. These referrals resulted in substantial profits for Rogan. *See Rogan I*, 459 F. Supp. 2d at 700. Although the government's lawsuit focused on particular false claims submitted from 1995 through 2000, the district court found that "[t]he conspiracy was evident in the early 1990s." *Id.* The court also concluded that the conspiracy began (albeit on an apparently smaller scale) at least as early as 1993. *See id.* (findings related to dealings between Roger Ehmen and Dr. Ravi Barnabas); *id.* at 722 (findings related to Dr. Barnabas). The court concluded that the government proved that, from 1995 through 2000, Rogan

---

[1] The other six participants in the fraud were charged criminally and pleaded guilty. The theory advanced by the government in the False Claims Act civil action was that Rogan conspired with the six indicted persons to defraud the United States.

caused EMC to submit over $19 million in false claims to Medicare and Medicaid. *Id.* at 727.

### C. The Rogan Children Trusts

In 1992, Rogan and his wife, Judith, set up three trusts in Florida for the benefit of their children (the Domestic Trusts). The Rogan Children are the only named beneficiaries of the Domestic Trusts. A 10% stock interest in EMC was the initial corpus for each of the Domestic Trusts. After EMC was sold in August 1994, the Domestic Trusts received money in exchange for the EMC stock they held. The Domestic Trusts also owned entities that, in turn, owned the management companies through which Rogan continued to operate EMC following its sale. During the period when Rogan operated EMC through these entities—from 1994 through 1997—the Domestic Trusts received millions of dollars in distributions from the entities. Fredrick Cuppy, who also served as Rogan's lawyer, was the trustee. He was later removed as trustee by the district court as part of the supplemental proceedings.

In June 1997, Rogan formed three additional trusts for his children under Belizean law (Belizean Trusts and collectively with the Domestic Trusts, the Trusts or Rogan Children Trusts). He funded the Belizean Trusts with interests in several of his companies. A company owned by Cuppy served as the trustee.

**D.  Supplemental Proceedings**

To collect its May 2007 judgment, Dexia served Peter Rogan and Judith Rogan with citations to discover assets. *See* Fed. R. Civ. P. 69; 735 ILCS § 5/2-1402. On September 26, 2007, Dexia initiated supplementary proceedings against the Rogan Children Trusts by serving a citation on Cuppy, the trustee of those Trusts. In February 2009, Dexia served citations upon the individual children.

As part of the proceedings, the district court granted various temporary restraining orders (TROs) to freeze assets. Before the court converted the TROs into preliminary injunctions, the Rogan Children moved to intervene for the purpose of protecting their claimed beneficial interests in the Trusts. The parties engaged in discovery related to the turnover proceedings, and the Rogan Children lodged various procedural and jurisdictional objections, none of which successfully ended the proceedings or removed the Trust assets from consideration.

During the course of ruling on the various challenges lodged by the Rogan Children, the district court judge discovered that two of the Defendants in Dexia's underlying lawsuit, Bainbridge Management, L.P. (Bainbridge LP) and Braddock Management, L.P. (Braddock LP), were citizens of both Illinois and Belize. This dual citizenship destroyed diversity jurisdiction, which does not exist where the party on one side of a case is foreign—Dexia is a French company—and the party on the other side is both domestic and foreign. *See Salton, Inc. v. Phillips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 875

(7th Cir. 2004). The district court dismissed Bainbridge LP and Braddock LP pursuant to Federal Rule of Civil Procedure 21 as nondiverse, dispensable parties. The district court also discovered that the May 2007 default judgment, which had been issued as a final judgment, was not actually final because it did not dispose of claims against Bainbridge LP (which was in bankruptcy and subject to an automatic stay), and the district court had not otherwise made any findings pursuant to Federal Rule of Civil Procedure 54(b). The court then ruled that the effect of dismissing the dispensable parties, including the one that had been in bankruptcy, was to make the May 2007 default judgment against the remaining defendants, Rogan and Bainbridge Management, Inc. (distinct from Bainbridge LP), retroactively final as of May 2007.

The district court conducted a bench trial on Dexia's motion for turnover. On July 7, 2009, the court issued a 48-page opinion granting Dexia's motion for turnover of assets, including those in the Rogan Children's Trusts, with the exception of $30,000 ($10,000 from each Trust) that was gifted to the Trusts by an individual named Scott Gross. This relief was predicated upon the court's finding that the Trust assets actually belonged to Rogan. As alternative relief, the court imposed a constructive trust on the property held by the Trusts. Again, the court excluded the $30,000 that Dexia did not establish was the result of Rogan's fraudulent activities. This appeal followed.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

The Rogan Children argue that the district court lacked and we lack subject matter jurisdiction over this case. They contend that Dexia has formed an "unincorporated association" with LaSalle Bank, an Illinois corporation, and that LaSalle's citizenship must be considered when determining whether the federal court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). They assert that, because some of the defendants are also Illinois citizens, Dexia's unincorporated association with an Illinois citizen destroys complete diversity of citizenship. The Rogan Children's claim that Dexia and LaSalle should be considered an unincorporated association is based on the following relationship: more than one year after Dexia issued EMC the letter of credit, LaSalle entered into a participation agreement with Dexia to assume a portion of Dexia's risk.

We must resolve a recognized issue of subject matter jurisdiction before any other action is taken on a case, *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 956 (7th Cir. 2003), and we review subject matter jurisdiction determinations de novo, *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

In the proceedings below, the district court determined that only Dexia, not LaSalle, was the real party in interest under Federal Rule of Civil Procedure 17. The district court reasoned that LaSalle's act of taking on part of the obligations with respect to the letter of credit did not transform it into a real party in interest with

regard to Dexia's tort claims against Rogan. The Rogan Children do not challenge this finding on appeal. Instead, they assert that the finding under Rule 17 has no bearing on their jurisdictional argument and that the narrow issue on appeal is whether Dexia and LaSalle, by sharing the profits and losses under the letter of credit, were operating as an unincorporated association.[2] Citing our holding in *Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir. 1998), that all of the members belonging to a Lloyd's of London syndicate had to be considered for purposes of diversity jurisdiction, the Rogan Children criticize the district court for restricting its analysis to whether Dexia and LaSalle formed a joint venture or partnership, as opposed to some form of unincorporated association akin to a Lloyd's syndicate.

---

[2] Despite arguing in their opening brief that the district court's determination regarding the real party in interest is not relevant to their claim on appeal, the Rogan Children themselves cannot avoid discussing it. In their reply brief, they argue that Dexia did not bring the suit on its own behalf because Dexia's judgment is for both its benefit and LaSalle's because LaSalle bore $20 million of the loss pursuant to the participation agreement. The district court properly addressed this when it reasoned that LaSalle suffered only a "trickle down" harm of Rogan's actions vis-à-vis Dexia, the party that suffered the direct injury. *See CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 347 (7th Cir. 2000) (holding that the real party in interest, whose citizenship is relevant for purposes of determining diversity, is the party injured and not its members who felt the injury only through a trickle down effect).

Thus, the Rogan Children frame the issue as whether Dexia and LaSalle operated as an unincorporated association, and they leave unchallenged the trial court's determination that Dexia sued on its own behalf and is the real party in interest.

It is true that when the question is "how the citizenship of [a] single artificial entity is to be determined," the citizenship of that entity is not determined using the real party to the controversy test. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 n.1 (1990). But this principle does not help the Rogan Children unless Dexia was such an unconventional plaintiff, "that is, someone or something other than either a natural person suing in his own rather than a representative capacity, or a business corporation," *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998), and not a corporate entity. If Dexia is a corporate entity, the inquiry regarding its citizenship remains straightforward. "[A] corporation is a corporation is a corporation," *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986), and determining its citizenship is as simple as looking at the "State where it has been incorporated and of the State where it has its principal place of business," 28 U.S.C. § 1332(c)(1). As we explained in *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133 (7th Cir. 2001), a lawsuit does not raise the subject matter jurisdiction problem that we addressed in *Indiana Gas* when a corporation is the named party:

> [In *Indiana Gas*], we held that complete diversity did not exist between the parties because the complaint named as defendants "Certain Underwriters

> at Lloyd's, London" and "Certain London Market Insurance Companies." *See* [141 F.3d] at 316. Because these entities were not corporations, we treated them as partnerships for purposes of diversity jurisdiction, and since at least one Lloyd's Name was domiciled in the same state as the plaintiff, complete diversity did not exist. *See id.* at 319. Here, the plaintiff is the Society of Lloyd's, a corporation incorporated under the laws of England, and there is no question that diversity jurisdiction exists.

*Estate of McMurray*, 274 F.3d at 1134 (citing *Indiana Gas*, 141 F.3d at 316, 319). Likewise, Dexia, the entity that initiated the lawsuit to recover for fraud, conspiracy, and other related torts, is a corporation incorporated under the laws of France and has its principal place of business in France. And "the status of the named litigant governs—provided that the litigant is an entity rather than a name for an unincorporated association such as a partnership." *Downey v. State Farm Fire & Cas. Co.* 266 F.3d 675, 680 (7th Cir. 2001) (citing *Carden*, 494 U.S. 185; *Indiana Gas Co.*, 141 F.3d 314).

The Rogan Children cannot escape the conclusion that this case did not involve an "unconventional party" that should have prompted the district court to take heed of "a jurisdictional warning flag" in relation to that entity. *Cosgrove*, 150 F.3d at 731. The Rogan Children's claim that the district court should have entertained further notions that "Dexia Crédit Local" actually meant something akin to a Lloyd's of London syndicate or other form of unincorporated association is unfounded.

Complete diversity of citizenship exists, and we affirm the district court's determination regarding subject matter jurisdiction.

## B. Finality of Judgment

In Illinois, supplemental proceedings under § 2-1402 are not available to creditors "until after judgment capable of enforcement has first been entered in their favor." *Marble Emporium, Inc. v. Vuksanovic,* 790 N.E.2d 57, 62 (Ill. App. Ct. 2003) (citing cases discussing § 2-1402); *see also* Ill. Sup. Ct. R. 277(a) ("A supplemental proceeding authorized by section 2-1402 of the Code of Civil Procedure may be commenced at any time with respect to a judgment which is subject to enforcement."); 735 ILCS 5/2-1402(a). The Rogan Children argue that, when Dexia issued citations to discover assets in the supplemental proceedings, it held a non-final judgment and that the citations were therefore invalid. They submit that although the district court entered a final judgment *nunc pro tunc* after dismissing nondiverse parties under Federal Rule of Civil Procedure 21, the remainder of the proceedings was void because no new citations based on the final judgment were issued.[3]

_____

[3] The Rogan Children submit, without citation to the record, that the district court entered a final judgment *nunc pro tunc.* Our review of the record reveals that, on February 9, 2009, the district court dismissed Defendants Bainbridge LP and Braddock LP pursuant to Rule 21 and, in doing so, deter-

(continued...)

In this appeal, the Rogan Children do not dispute that the district court's dismissal of nondiverse parties was a proper exercise of its authority under Rule 21. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 & n.6 (1989); *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000). We recently held, in a separate appeal filed by Judith Rogan challenging the district court's issuance of a preliminary injunction in these same supplementary proceedings, that "the district court properly dismissed the nondiverse parties under [Rule] 21 and preserved its jurisdiction." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010).

On the claim that they do advance—that the dismissal of non-diverse parties was insufficient to retroactively render the May 2007 judgment final—we disagree. The Rogan Children make no attempt to explain what purpose would be served by requiring that the discovery citations be re-issued. Nor do they explain why it would be necessary. Rule 21 dismissals are retroactive, *Newman-Green*, 490 U.S. at 829, and the complaint is read as if the dismissed party had never been included, *LeBlanc v. Cleveland*, 248 F.3d 95, 99 (2d Cir. 2001). Retroactive applications of Rule 21 have permitted appellate courts to affirm decisions of district courts

---

[3] (...continued)

mined that the Rogan Children no longer had any basis to challenge the finality of the May 2007 judgment "due to the retroactive effect of the Rule 21 dismissals." (R. 100-01.) Perhaps this is what the Rogan Children meant by *nunc pro tunc*. In any event, it makes no difference to the analysis.

on the merits despite the fact that the change in the parties did not occur until much later in the litigation, thereby avoiding the "waste of time and resources [that] would be engendered by remanding to the District Court or by forcing the[ ] parties to begin anew."*Newman-Green*, 490 U.S. at 838. The Supreme Court observed:

> [i]f the entire suit were dismissed, Newman-Green would simply refile in the District Court against the [defendants remaining after the Rule 21 dismissal] and submit the discovery materials in hand. The case would then proceed to a preordained judgment. . . . Newman-Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity.

*Id.* at 837 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 854 F.2d 916, 932, 939-40 (7th Cir. 1988) (Easterbrook, J., dissenting)). The Rogan Children have offered us no answer to this rationale. Their suggestion that Dexia should be required to jump through the judicial hoop of refiling their citations, only to proceed in the district court to a preordained judgment, does not comport with the efficient administration of justice.

Moreover, the district court's actions were entirely consistent with considerations of finality in those situations where a judgment becomes final during the pendency of an appeal. *See Lovelette v. S. Ry. Co.*, 898 F.2d 1286, 1289 (7th Cir. 1990) ("[T]he failure to certify a judgment on a separate claim as final under Rule 54(b) can be cured where the rest of the claims and parties are dismissed during the pendency of the appeal."). Just

as in *Lovelette*, "[w]e see no reason not to extend an analogous principle to the present situation," *id.*, particularly when we also allow *nunc pro tunc* orders to render non-final orders final and confer appellate jurisdiction—without dismissal of the appeal or need to re-file the notice of appeal, *see Local P-171, Amalgamated Meat Cutters and Butcher Workmen of N. Am. v. Thompson Farms Co.*, 642 F.2d 1065, 1073 (7th Cir. 1981) (holding that a district court has the power to add a Rule 54(b) certification to an order *nunc pro tunc* after the filing of a premature notice of appeal). *See also King v. Gibbs*, 876 F.2d 1275, 1278 (7th Cir. 1989).

Once the district court properly dismissed the non-diverse parties, only those parties against whom judgment had already been entered remained in the case. The retroactive application of Rule 21 rendered the judgment final and enforceable against these remaining parties, and the court did not err in allowing the matter to proceed upon the citations that had already issued.

## C. Scope of a District Court's Authority in Supplemental Proceedings

Federal Rule of Civil Procedure 69(a) provides that "[t]he procedure on execution [of a money judgment]—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). In Illinois, 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 govern supplemental

proceedings. Supplementary proceedings are post-judgment processes that support the judgment creditor in asset discovery and final satisfaction of judgment. *Star Ins. Co. v. Risk Mktg. Group, Inc.*, 561 F.3d 656, 662-63 (7th Cir. 2009). The applicable statute provides:

> [a] judgment creditor . . . is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment.

735 ILCS 5/2-1402(a). The service of a citation to discover assets initiates supplemental proceedings. *Id.*; *see also Cacok v. Covington*, 111 F.3d 52, 53 (7th Cir. 1997).

On appeal, the Rogan Children assert that the district court acted outside its authority in adjudicating the substantive property rights of third parties under equitable theories such as alter ego. They claim that an analysis of the scope of the proceedings is complicated by the fact that even though Dexia was proceeding under an alter ego theory throughout the case, the district court ultimately analyzed the issue under an ownership theory pursuant to our opinion in *Star Insurance.* In that case, we held that the allegations that must be made to pierce the corporate veil do not fall within the scope of supplemental proceedings wherein the only relevant inquiries are: "(1) whether the judgment debtor

is in possession of assets that should be applied to satisfy the judgment; or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Star Ins. Co.*, 561 F.3d at 660-61 (citing *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994)). The Rogan Children assert that regardless of the theory used by the district court, it did not have the authority to adjudicate their personal property rights.

Although the Rogan Children contend that the district court altered the legal theory upon which it relied and thereby disadvantaged them, they do not clearly show what this means to their appeal. Additionally, we do not agree with their characterization of how this case was framed or presented. The district court's final order granting turnover of assets was issued on July 7, 2009. Earlier, in a March 12, 2009, order denying summary judgment on the Rogan Children's claim that Dexia could not pursue sham trust, constructive trust, or alter ego theories without filing a separate claim, the district court wrote:

> This argument misstates what Dexia is attempting to accomplish in the supplemental proceedings. Dexia has already prevailed on its claims against Peter Rogan. Dexia now seeks to satisfy its judgment against Rogan by collecting assets in the possession of the Rogan domestic trusts that Dexia contends are actually Peter Rogan's assets based on the equitable theories listed above. Dexia does not need to assert a new claim to engage in such proceedings

to enforce its judgment against Peter Rogan. Though the situation might be different were Dexia seeking to hold the Rogan domestic trusts directly liable to Dexia (in other words, irrespective of whether the trusts' assets are actually Peter Rogan's), Dexia is not now attempting to do so.

*Dexia Crédit Local v. Rogan*, 624 F. Supp. 2d 970, 982 (N.D. Ill. 2009). In response to the Rogan Children's argument that Dexia could not use alter ego or veil piercing claims in a supplementary proceeding, the court explained that Illinois allows a judgment creditor to reach assets of a debtor that are in the hands of third parties, which was what Dexia was seeking. *Id.* at 982-83 ("[T]he Rogan children place undue emphasis on the labels Dexia has used to describe its equitable theories. In these supplementary proceedings, Dexia does not attempt to impose liability directly on Rogan domestic trusts. Rather, Dexia asserts that those trusts hold Peter Rogan's assets. Dexia may use equitable theories, including an alter ego theory or similar theories, to attempt to prove that assertion.").[4] In a much earlier order granting injunctive relief, the court similarly reasoned:

---

[4] In its appellate brief, Dexia notes that courts have used the term "alter ego" in traditional veil piercing cases and property ownership cases, even though only the former implicates the issue of derivative liability. Dexia maintains that, at every stage, it advanced the alter ego/nominee theory only in the context of property ownership, not as a means to pierce the veil or impose derivative liability.

Illinois Supreme Court Rule 277(a), which governs citation proceedings, likewise permits a proceeding to be "against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." That is the primary basis upon which Dexia has proceeded in this matter—its contention that third parties hold property that actually is Peter Rogan's, even though it is held under some other guise.

*Dexia Crédit Local v. Rogan*, 2008 WL 4543013, at *6 (N.D. Ill. Oct. 9, 2008). Consequently, the Rogan Children are the only parties who have attempted to construe Dexia's claim as one that is akin to piercing the corporate veil.

The Rogan Children have shown us nothing that convinces us that the district court granted relief outside the proper scope of supplemental proceedings. A district court may inquire as to whether third parties hold assets of the judgment debtor, and once it is discovered that a third party holds such assets, the court may order the third party "to deliver up those assets to satisfy the judgment." *Pyshos*, 630 N.E. 2d at 1057; *see also Dowling v. Chi. Options Assocs., Inc.*, 847 N.E.2d 741, 746 (Ill. App. Ct. 2006) ("The provisions of section 2-1402 are to be liberally construed, and the statute gives the court broad powers to compel the application of discovered assets or income in order to satisfy a judgment."); *Kennedy v. Four Boys Labor Serv., Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996) (stating that the Illinois statute "gives courts broad powers to compel the application of discovered assets or income to satisfy a judgment"); *Elmhurst Auto*

*Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.*, 600 N.E.2d 1229, 1233 (Ill. App. Ct. 1992) (noting that the supplemental proceedings statute is not a mere discovery statute, but permits the court to determine the rights of third parties). As long as the action seeks the judgment debtor's assets and does not concern personal liability, it falls within the scope of a supplemental proceeding. *Kennedy*, 664 N.E.2d at 1092-93 (explaining that a claim brought pursuant to the Fraudulent Transfer Act was properly brought in supplementary proceedings because it did not concern personal liability, but attempted to avoid the transfer of assets, sought recovery of the actual assets transferred, and ordered that the property be returned). Here, the district court determined that the Children's Trusts contained assets of the judgment debtor, Peter Rogan. Accordingly, it held that Dexia was entitled to turnover of the assets of the Children's Trust, terminated the interests of the Rogan Children in the Trusts (with the exception of $30,000), and ordered the trustee to turn over trust assets to Dexia. Following turnover, the Trusts would continue to exist and hold any property that did not belong to Peter Rogan. In taking this action, the district court did not exceed the broad power and authority that is granted to courts in supplemental proceedings to apply assets to satisfy a judgment.

In their reply brief, the Rogan Children assert for the first time that the imposition of a constructive trust requires proof of elements that extend beyond the scope

of supplemental proceedings.[5] The Rogan Children have not independently and sufficiently developed their theory challenging the district court's authority to impose a constructive trust. *See JTC Petroleum Co v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 781 (7th Cir. 1999) (warning that a litigant must do more than assert a novel theory that it wants us to buy); *see also Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (underdeveloped arguments are considered waived). Moreover, as we have often noted, arguments raised for the first time in a reply brief are waived. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).

## D. Right to a Jury Trial

The turnover order challenged in this appeal was issued after a bench trial. The Rogan Children claim that they should have been granted a jury trial pursuant to the Seventh Amendment because the district court's determination of the true ownership of trust assets is an action at law, not equity.

The right to a jury trial in federal court hinges on federal procedural law. *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). Federal

---

[5] In their opening brief, the Rogan Children appear to assume that the imposition of a constructive trust was within the scope of the proceedings, arguing only that there was insufficient tracing evidence for the court to impose it. We will address the tracing issue later in this Opinion.

Rule of Civil Procedure 38(a) preserves to parties the right of a trial by jury as declared by the Seventh Amendment to the Constitution or as otherwise provided by federal statute. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. To determine whether a particular action will resolve legal rights and thus give rise to a jury trial right, we must examine both the nature of the claim for relief and the remedy sought. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002). First, we must "compare the . . . action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States*, 481 U.S. 412, 417-18 (1987) (citations omitted). The "'abstruse historical' search for the nearest 18th-century analog," *id.* at 421; *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, is less important than determining whether the remedy sought is equitable or legal in nature, *see Tull*, 481 U.S. at 421; *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42 (1989); *Marseilles*, 299 F.3d at 648.

Here, the outcome of the second and more important inquiry regarding the nature of the remedy sought leads to the conclusion that the Rogan Children were not entitled to a jury trial. Legal remedies traditionally involve money damages, while equitable remedies are typically coercive and enforceable directly on the

persons or things to which they are directed. *Int'l Fin.*, 356 F.3d at 736 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002)). "A suit seeking only equitable relief is not a suit at common law, regardless of the nature of the issues likely or even certain to arise in the case." *Marseilles*, 299 F.3d at 648. In the supplemental proceedings, Dexia sought the turnover of assets belonging to Peter Rogan, the judgment debtor. The district court explained:

> The Rogan Children are the putative beneficiaries of those trusts. As such, their interests in the trusts are intangible assets. Dexia is attempting to terminate the children's intangible interests and obtain a turnover of the assets of the trusts, which are held not by the children, but by the trustees of the trusts.

(Mar. 30, 2009, Order at 6.) At no time did Dexia seek derivative liability against the Trusts themselves or money damages from the Rogan Children, and the relief ultimately obtained was enforceable directly on the Trusts and was equitable in nature. *See Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7th Cir. 1993) (holding that an order that property be turned over to the judgment creditor because it was actually the property of the judgment debtor was in the nature of specific performance); *In re Estate of Beckhart*, 864 N.E.2d 1002, 1005 (Ill. App. Ct. 2007) (describing the remedial and equitable character of constructive trusts); *see also People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 191 (Ill. App. Ct. 1986) (describing a constructive trust as "a device used by chancery to compel one who unfairly

holds property to convey the property to the party to whom it justly belongs"). The nature of the relief sought was purely equitable, thus it mattered not whether any of the issues were legal in their nature.

The Rogan Children were not entitled to have a jury decide whether Rogan owned and controlled the assets that were held in the Children's Trusts, and the district court's decision to conduct a bench trial does not warrant reversal.

### E.   Statutes of Limitations

Under Federal Rule of Civil Procedure 69(a), Illinois procedural law applies to Dexia's effort to enforce its judgment, and Illinois law imposes a seven-year limitations period. 736 ILCS 5/12-108(a) ("Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act."). In May 2007, the district court entered judgment against Rogan. Dexia filed its motion for turnover of assets well within seven years of this judgment. Nevertheless, because Dexia pursued the equitable remedy of a constructive trust on any assets belonging to Rogan that were held in the Children's Trusts, the Rogan Children claim that the seven-year statute of limitations does not apply and instead that Illinois's five-year statute of limitations applies. *See Hagney v. Lopeman*, 590 N.E.2d 466, 462 (Ill. 1992) (holding that, in Illinois, a five-year statute of limitations applies to an action for constructive trusts).

They contend that the limitations period began to run in early 2001 when the Federal Bureau of Investigation informed Dexia that Rogan was being investigated for Medicare fraud or, at the latest, when Dexia filed its own lawsuit in November 2002. This, according to the Rogan Children, would have required Dexia to file its claim for the imposition of a constructive trust by November 14, 2007.

We review statute of limitations determinations de novo. *In re marchFIRST Inc.*, 589 F.3d 901, 903 (7th Cir. 2009). Dexia maintains that the Rogan Children have waived this statute of limitations argument. Although the Rogan Children asserted as an affirmative defense in response to the citations that Dexia's claims were barred "by the applicable statute of limitations," they did not claim that the five-year statute of limitations for constructive trusts barred Dexia's claim until they filed a post-trial brief on June 5, 2009. The only specific statute raised prior to trial was Florida's statute of repose. Failure to argue a specific statute of limitations, even if others are argued, constitutes waiver. *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995). Here, because the Rogan Children failed to identify the five-year statute of limitations for constructive trusts before the trial, Dexia had no notice that the Rogan Children were attempting to bar their claim on this basis, and it was thus prevented from defending against this limitation defense through the presentation of evidence. *See, e,.g., Frederickson v. Blumenthal*, 648 N.E. 2d 1060, 1063 (Ill. App. Ct. 1995) (noting that the burden is on the plaintiff to show the application of Illinois's discovery

rule to justify filing constructive trust action outside the five-year statute of limitations). Dexia does present argument in response to the Rogan Children's belated statute of limitations claim: that Dexia initiated enforcement by serving citations in June and September 2007, before the November 2007 limitations deadline proposed by the Rogan Children; and that the limitations period was tolled under the discovery rule because Cuppy obstructed Dexia from obtaining critical information about the Trusts. They contend that Dexia's November 2002 lawsuit only established that it was aware that Rogan fraudulently induced it to issue the letter of credit by concealing fraud at EMC and that the Trusts received proceeds of the sale of EMC, not that the transfers were part of Rogan's scheme to defraud creditors. The Rogan Children's failure to raise the specific statute of limitations defense has limited Dexia's ability to fully develop the arguments against application of the five-year statute of limitations and highlights why its failure should constitute waiver. For their part, the Rogan Children have not presented any excuse for waiting until after the trial to raise the five-year statute of limitations as an affirmative defense.

In any event, all of this is beside the point if the five-year statute of limitations is inapplicable in this suit, as the district court held. The statute the Rogan Children cite states:

> Except as provided in Section 2-725 of the "Uniform Commercial Code", approved July 31, 1961, as amended, and Section 11-13 of "The Illinois Public

Aid Code", approved April 11, 1967, as amended, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

735 ILCS 5/13-205. The supplemental proceedings in this case were not an action on a contract or award of arbitration, an action to recover damages for injury to property or to recover the possession of personal property, an action for damages for detention or conversion of such property, or an action not otherwise provided by statute. The proceedings were initiated to enforce and satisfy a previously-obtained money judgment. Thus, the statute specifically governing such proceedings determines the rights and liabilities of the parties. *See* Fed. R. Civ. P. 69(a); 736 ILCS 5/12-108(a). Dexia obtained a judgment and then issued citations to discover assets within seven years of obtaining that judgment, which is the recognized procedure in Illinois to enforce a judgment and to discover and recover assets that may be applied in satisfaction of the judgment. *See Pontikes v. Perazic*, 692 N.E. 2d 712, 716-17 (Ill. App. Ct. 1998). We find no error in the district court's application of the seven-year statute of limitations.

The Rogan Children also argue that Dexia's 2008 motion for turnover of assets in the Domestic Trusts

is barred by Florida's statute of repose. Under Florida law, an action based on fraud must be initiated within twelve years after the date of the commission of the alleged fraud, regardless of the date when the fraud was or should have been discovered. Fla. Stat. § 95.031(2)(a). The district court held, we believe correctly, that Dexia's action seeking turnover of Rogan's assets held in the Trusts did not implicate Florida's limitations period for fraud, but was instead governed by the same limitation that applies to the enforcement of judgments. When Dexia initiated supplemental proceedings, it had already obtained a judgment based upon Rogan's fraud. The Rogan Children provide no argument to persuade us that, merely because some of the assets amenable to turnover are held in Trusts that were first established in Florida, the nature of the citation proceedings has been altered or requires application of a separate statute of repose. The only choice of law analysis they make is under Florida law, but Rule 69(a) provides that proceedings supplemental must accord with the procedure of the state where the court is located. The Rogan Children do not advance any choice of law analysis under Illinois law.

We conclude that the statute of limitations and the statute of repose cited by the Rogan Children did not bar the supplemental proceedings.

### F.  District Court's Findings of Fact

After a bench trial, a district court's findings of fact may only be set aside if they are found to be "clearly

erroneous." Fed. R. Civ. P. 52(a)(6). We reverse only if we are left with a "'definite and firm conviction that a mistake has been committed.'" *RK Co. v. See*, ___ F.3d ___, No. 07-3984, 2010 WL 3655946, at *4 (7th Cir. Sep. 22, 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). When there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous. *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006). However, we review determinations regarding the application of issue preclusion de novo. *See United States v. Thyfault*, 579 F.3d 748, 750 (7th Cir. 2009).

The Rogan Children challenge the district court's finding that Rogan's fraud began in the early 1990s, and no later than 1993, a finding that was critical to the district court's imposition of a constructive trust on the 1994 bond proceeds. (This finding was not relevant to the district court's determination that Peter Rogan owned the assets in the Trusts.) To make this finding regarding the beginning date of Rogan's fraud, the district court determined that findings from *Rogan I*, 459 F. Supp. 2d 692, precluded relitigation of the issue.

Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (holding that the preclusive effect of a federal-court judgment is determined by federal common law). Preclusion applies if (1) the issue sought to be precluded is the same as that

involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Restatement (Second) of Judgments* § 27; *Bobby v. Bies*, ___ U.S. ___, 129 S. Ct. 2145, 2152 (2009) (defining the elements of issue preclusion in federal litigation); *Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997). The Rogan Children assert that issue preclusion does not apply because the propriety of the 1994 sale of EMC was not at issue in *Rogan I*, and because neither they nor the Trusts were parties in that case.

*Rogan I* did not concern whether the sale of the hospital or the financing of that sale involved fraud, but the court did consider and determine the latest possible starting point of Rogan's healthcare fraud scheme. 459 F. Supp. 2d at 700-01. Examining evidence related to the origins of the fraud and conspiracy, the district court in *Rogan I* determined that Rogan and several doctors conspired in the early 1990s to arrange referrals to Rogan's hospital in return for kickbacks, resulting in substantial profits for Rogan. *Id.* at 700; *see also id.* at 722-24 (describing how from 1993 to 1998 Rogan arranged for EMC to enter into a series of teaching and physician-recruiting contracts with physicians that violated the Stark and Anti-Kickback Statutes and thus knowingly caused EMC to submit false claims to the federal government). That determination regarding

Rogan's pre-1995 relationships with co-conspirators and the starting point of the fraudulent activity was essential to the decision that Medicaid and Medicare claims that Rogan caused to be submitted in 1995 and later were false, 31 U.S.C. § 3729(a)(1)-(2). It was also essential to the conclusion that he was a member of the charged conspiracy and committed numerous overt acts in furtherance of the conspiracy, 31 U.S.C. § 3729(a)(3), including negotiating and signing contracts.

It is true that the Rogan Children were not parties in the prior action. However, this does not end the inquiry as there are several recognized exceptions to the general rule that a person who was not a party to a suit has not had a full and fair opportunity to litigate issues in that suit. The district court applied one such exception: the "adequately represented" exception. *See Taylor*, 553 U.S. at 894-95 (recognizing that, in certain limited circumstances, a nonparty may be bound by a judgment because he was adequately represented by someone with the same interests who was a party to the suit). We agree with the district court's reasoning that Rogan had the same interests in *Rogan I* as his children (or the Trusts) had in defending against the imposition of a constructive trust in the supplementary proceedings—namely, to persuade the trier of fact that Rogan did not knowingly engage in healthcare fraud. Had Rogan not engaged in such fraud, the Court could not follow to the present day the assets he originally obtained and put into the Trusts, and could not impose a constructive trust. *See Schultz v. Schultz*, 696 N.E.2d 1169, 1173 (Ill. App. Ct. 1998) ("A constructive

trust is an equitable remedy imposed against one whom, by some form of wrongdoing such as actual or constructive fraud, . . . has been unjustly enriched."); *see also Johnson v. La Grange State Bank*, 383 N.E.2d 185, 195 (Ill. 1978) (refusing to impose constructive trust on assets where fraud was not established). The government succeeded on its claims under the FCA by showing that Rogan engaged in fraud. *Rogan I*, 459 F. Supp. 2d at 716-17 (including as an element of a claim under the FCA that the defendant caused to be presented to the United States a false or fraudulent claim for payment or made, used, or caused another to make or use a false statement of document); *id.* at 722 (discussing proof that Rogan caused EMC to submit claims for reimbursement from Medicare and Medicaid for services that were not in compliance with the Stark and Anti-Kickback Statutes and were thus false). The government also established the elements of, and was entitled to recover damages for, common law fraud and unjust enrichment. *Id.* at 728. Issue preclusion prevents the Rogan Children from challenging the finding that Rogan's fraud began no later than 1993.

In their opening brief on appeal, the Rogan Children list five of the district court's factual findings related to Rogan's ownership of the Trust property that they contend were not supported by competent evidence. However, they fail to make any attempt to show how these findings were clearly erroneous. We need not consider this undeveloped claim, especially in light of the burden a party alleging error bears to demonstrate that a particular factual finding is clearly erroneous. *Carnes*

*Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847 (7th Cir. 2005).

### G. Constructive Trust

The Rogan Children claim error with respect to the district court's imposition of a constructive trust on the assets held in the Trusts. They admit that the district court traced some property to the Trusts, but argue that the court never determined whether the Trusts still owned any of that property or received property from other sources (aside from the $30,000 in gifts that the court excluded from the turnover order). They contend that "no one knows precisely what the trusts own and, therefore, what assets are subject to a constructive trust." (Appellant Br. 29.)

Under Illinois law, a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving the benefit to convey the property back to the person from whom it was received. *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 745 (Ill. 1994) (citing Restatement of Restitution § 160). "[I]t is a restitutionary remedy which arises by operation of law, and is imposed by a court . . . in situations where a person holding money or property would profit by a wrong or be unjustly enriched at the expense of another if he were permitted to retain it." *People ex rel. Daley for Use of Cook County v. Warren Motors, Inc.*, 483 N.E.2d 427, 430 (Ill. App. Ct. 1985) (internal citations omitted); *see also FTC v. QT, Inc.*, 605 F. Supp. 2d 999, 1008 (N.D. Ill. 2009) (stating that a constructive trust is created by the

court to avoid unjust enrichment when a party has obtained money to which he is not entitled and in equity and good conscience ought not to retain) (citing *Smithberg v. Ill. Mun. Ret. Fund*, 735 N.E.2d 560, 565 (Ill. 2000)). "'The particular circumstances in which equity will impress a constructive trust are as numberless as the modes by which property may be obtained through bad faith and unconscientious acts.'" *Warren Motors*, 483 N.E.2d at 431 (quoting *County of Cook v. Barrett*, 344 N.E.2d 540, 545 (Ill. App. Ct. 1976)). A party seeking a constructive trust must establish "the existence of identifiable property to serve as the res upon which a trust can be imposed and possession of that res or its product by the person who is to be charged as the constructive trustee." *People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 191 (Ill. App. Ct. 1986).

The Rogan Children do not deny that Dexia met its initial burden to trace the proceeds of fraud to the Trusts. In other words, Dexia showed that the Rogan Children Trusts received money from the sale of EMC and management fees for services provided by Rogan-controlled entities, or held stock in companies that received this money. On appeal, they argue that since all of the transfers occurred before 2002, Dexia was required to establish what happened to the sale proceeds and management fees after they were transferred to the Trusts. The Rogan Children are, in essence, proposing that since 2002, legitimate funds may have been commingled with the pre-2002 transfers. They do not point to evidence of such commingling or equivocally argue that commingling occurred. Instead, they contend that

nobody knows for sure. However, even if such commingling occurred, it would not impose an additional burden of proof on Dexia. *See In re Estate of Wallen*, 633 N.E.2d 1350, 1360 (Ill. App. Ct. 1994) ("[O]nce claimant made a specific showing that the administrator commingled the assets of the corporation with those of the estate, the burden shifted to the administrator to sort out and account for those assets as he was in the best position to know of them."); *De Fontaine v. Passalino*, 584 N.E.2d 933, 942 (Ill. App. Ct. 1991) (holding that when a trustee commingles his own property with that of the beneficiaries, the burden rests on the trustee to show which property belonged to the trustee before the commingling). In addition, when a trustee has commingled trust funds with his own and subsequently withdrawn sums from the combined fund for his own use, the conclusive presumption is that the trustee withdrew his own funds first, leaving behind the trust funds. *People v. Barrett*, 90 N.E.2d 94, 98 (Ill. 1950); *see also In re Comm'r of Banks & Real Estate*, 764 N.E.2d 66, 101 (Ill. App. Ct. 2001) (stating that where a trustee commingles funds and later withdraws money from the commingled fund, the trust account holder is entitled to enforce his equitable lien upon the funds that remain).

The district court cited various examples of Rogan manipulating trust assets for his purposes, drawing from the Trusts as a single pool of assets without regard for any separation of title or identity of the named beneficiaries. With the exception of a $10,000 gift to each of the Domestic Trusts by a third party, there is neither proof of any legitimate source for the assets of the Trusts

to counter the evidence presented by Dexia nor evidence that any person other than Rogan had control over trust assets. Moreover, the reason that Dexia's evidence of transfers pre-dates 2002 is not difficult to understand in the context of this case. In 2001, EMC terminated its contract with Rogan's management companies following its discovery of Rogan's fraud. Additionally, EMC closed in December 2001, and the government initiated litigation against Rogan in May 2002.

The Rogan Children have not pointed to any evidence that would undercut the district court's determinations that the Trusts were funded by Rogan's fraud (and not some legitimate contributor) and that he continued to control those assets once deposited, either directly or through his agents. We find no error in the district's court's imposition of a constructive trust on all but $30,000 of the trust assets.

## H.  Citation Respondents

Dexia served on Peter Rogan, Judith Rogan, and Fredrick Cuppy citations to discover assets. The Rogan Children argue that there was insufficient evidence that any of these citation respondents held Rogan's property. They assert that neither Peter nor Judith have been shown to be "in possession of any assets held by" the Trusts "which are the property of Peter Rogan." (Appellant Br. 41.) Likewise, they assert that no evidence was presented at trial showing that Cuppy was in possession of such assets, and that he was removed as trustee of the Domestic Trusts by order of the district court. The Rogan

Children argue that because these third parties did not possess assets of the judgment debtor, the district court had no authority to enter a judgment against them.

The Rogan Children's argument is misplaced. The district court did not find that any of these respondents personally possessed assets of Rogan—that was not the relevant inquiry. In ordering the turnover of assets the court found that Dexia was entitled to turnover of the assets of the Trusts (excluding $30,000) because the Trusts themselves held the property of Rogan, the judgment debtor. He funded the Trusts through money fraudulently obtained and never relinquished control of those assets once they were placed in the Trusts. To effectuate turnover, the district court terminated any interests held by the Rogan Children in those Trusts (except for $30,000), ordered any existing trustee to turn over the assets to Dexia, and directed Dexia to file a motion for the appointment of a trustee for any Trust that did not currently have a trustee so that the court could appoint a trustee who would be ordered to turn trust assets over to Dexia.

This order against the Trusts was consistent with the citation that Dexia issued to Cuppy. The citation stated that it was being issued to Cuppy "[i]ndividually, as partner in the law firm of Burke Costanza & Cuppy, and as an agent, trustee, and/or lawyer for any person/entity identified in Rider A." (Supp. App. 168.) Rider A plainly identified the Rogan Children Trusts as entities to which the citation applied. Thus, the Trusts themselves were respondents. In addition, Rogan was a citation

respondent. By serving these citations, Dexia perfected its judgment lien on all personal property belonging to Rogan that was in his possession or control, or in the possession or control of the third-party Trusts. 735 ILCS § 5/2-1402(m).

Although the Rogan Children think it important that Cuppy was removed as the trustee prior to the issuance of the turnover order, they present no authority showing that his removal as trustee meant that the Trusts were no longer citation respondents, or that the district court was no longer empowered to compel assets within the Trusts to satisfy the judgment. The district court specifically allowed for the appointment of a new trustee, upon which occurrence the court would order the new trustee to turn over the assets of the Trusts. We find no error.

## I.   Personal Jurisdiction over Robert Rogan

Robert Rogan argues that we should reverse the district court's judgment against him because the court did not have personal jurisdiction over him. Robert argues that he is a California citizen and has no contacts with Illinois.

For appeal purposes, supplementary proceedings to enforce judgments are treated as separate, free-standing lawsuits. *Star Ins. Co.*, 561 F.3d at 659. Orders within supplemental proceedings are appealable to the same extent as in a regular lawsuit. *Id.*; *see also Laborer's Pension Fund v. City Work Unlimited, Inc.*, 919 F.2d 491, 493-94 (7th

Cir. 1990). The district court's July 7, 2009, order to turn-over assets of the Rogan Children Trusts, except for $30,000, was a final, appealable order. However, the November 18, 2008, order of the district court that Robert Rogan seeks to appeal is not final and appealable.

On November 18, 2008, the district court denied Robert's motion to dismiss for lack of personal juris-diction. The district court specifically distinguished between cases in which the party challenging jurisdic-tion is accused of wrongdoing and cases where the party is believed to be the innocent recipient of fraudulently obtained money. (Appellants' App. 81-88.) Consistent with this distinction, the court's turnover order was not a ruling on Dexia's claim against Robert personally as a fraudulent transferee of trust assets, did not otherwise suggest wrongdoing by Robert, and was not against him individually.

Robert argues that the issue of personal jurisdiction is dispositive because a district court violates due process when it uses a turnover proceeding to adjudicate the property rights of third parties who are not amenable to jurisdiction in that forum, and that the district court's turnover order terminated his interest in the Trusts. (Appellants' Br. 23 (citing *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 324 (5th Cir. 2006) (construing Texas's turnover statute in the context of an action to pierce the corporate veil).) This argument appears, in some ways, to be a re-formulation of the argument re-garding the scope of supplemental proceedings because it requires that we first find that the turnover order

adjudicated Robert's substantive rights or seized his assets. But we have already noted that the district court's order was based on its determination that the Children's Trusts held assets of the judgment debtor because he only nominally placed them in the Trusts and continued to exercise control over the property for his own benefit. In other words, Peter Rogan never actually transferred the assets to the Trusts. Accordingly, property that did not actually belong to Peter Rogan, i.e., $30,000 gifted by a third party, was not impacted by the turnover order. Robert's appearance and participation was not necessary to the entry of the turnover order with respect to this property. Illinois's supplementary proceedings statute contemplates the relief ordered by the district court in this case, and the Rogan Children have pointed to no authority showing that Illinois's statute violates due process.

## III. CONCLUSION

Based on the foregoing reasons, we AFFIRM the ruling of the district court.