2020 IL App (1st) 181787-U

THIRD DIVISION
December 30, 2020

Nos. 1-18-1787 and 1-19-0319, Consolidated

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| DR. MICHAEL G. KOEHLER, PhD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 L 2147 |
| | ) | |
| THE PACKER GROUP, INC.; PACKER | ) | |
| ENGINEERING, INC., DR. KENNETH PACKER; | ) | |
| WARREN DENNISTON; and CHARLOTTE SARTAIN, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Dr. Kenneth Packer, Defendant-Appellant, Paula Packer, | ) | Honorable |
| Adverse Claimant-Appellant; Mark Langille, Adverse | ) | Alexander P. White, |
| Claimant-Appellant; Ryan Langille, Adverse Claimant). | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1  *Held*:  The judgment of the circuit court of Cook County is affirmed in part and reversed in part; we affirm the trial court's order of May 5, 2017 dissolving its previously issued stay order; we affirm the trial court's order dismissing adverse claimants' adverse claim under section 2-615 of the Illinois Code of Civil Procedure as legally insufficient; but we find the trial court abused its discretion in dismissing the adverse claim with prejudice without providing an opportunity for adverse claimants to amend; we remand the case for further proceedings.

¶ 2    In supplementary proceedings, plaintiff served third-party citations to discover assets to collect on a $2,550,000 judgment plaintiff obtained against defendants. The third party respondents answered they held assets owned by defendant, Dr. Kenneth Packer (Packer). In response to the third-party citation, Packer alleged certain of the assets identified by third party respondents as belonging to Packer actually belonged to his wife, Susan Packer (Susan), a non-party adverse claimant. Susan was subsequently given notice of the supplementary proceedings. Susan as the alleged owner of this property and her sons as the co-trustees of a marital trust (collectively "adverse claimants") jointly filed their appearance, a petition to intervene, and an adverse claim to the subject property.

¶ 3    Plaintiff moved to strike the adverse claim with prejudice. The trial court granted plaintiff's motion dismissing with prejudice the adverse claimants' petition to intervene and the adverse claim. Appellants, Packer, Susan, and Mark Langille, one of the co-trustees of the marital trust, appealed arguing the trial court erred (1) in striking adverse claimants' adverse claim, or alternatively, in striking the claim with prejudice; (2) in striking adverse claimants' petition to intervene; or in the alternative, in striking the petition with prejudice; and (3) in granting plaintiff's request to reopen supplementary proceedings by lifting its previously issued stay. For the reasons set forth below, we affirm the trial court's orders in part and reverse in part.

¶ 4                                    BACKGROUND

¶ 5                                    Litigation History

¶ 6    In February 2011, Plaintiff, Dr. Michael G. Koehler, filed an individual lawsuit against defendants, The Packer Group, Inc. (TPG), Packer Engineering, Inc. (PEI), Packer, Warren Denniston, and Charlotte Sartain stemming from the termination of his employment as chief

executive officer of PEI (individual lawsuit). On June 5, 2014, plaintiff received a judgment totaling $2,550,000 comprised of varying sums against TPG, PEI, Packer, Denniston, and Sartain. The judgment was subsequently affirmed by this court (2014 individual lawsuit appeal) and petition for leave to appeal to the Illinois Supreme Court was denied. See *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767; *Koehler v. Packer Group, Inc.*, 60 N.E. 3d 874 (2016). In September 2014, plaintiff commenced a supplementary citation proceeding to enforce the judgment in his individual lawsuit wherein he issued third-party citations to discover assets to various entities including Centennial Bank (Centennial), American General Life Insurance Company (American General), and Wyndemere Luxury Senior Living Company (Wyndemere). The supplementary citation proceeding is the subject of this appeal.

¶ 7                        Citation Proceeding in Plaintiff's Individual Lawsuit

¶ 8      As noted above, in the supplemental proceedings to enforce the judgment in his individual lawsuit, plaintiff issued third-party citations to discover assets to Centennial, American General, and Wyndemere.

¶ 9      On October 3, 2014, Wyndemere responded to the third-party citation indicating it was holding $299,900 plus applicable interest which represented Packer's entrance payment to Wyndemere's senior living community. The entrance payment was comprised of a $213,675 loan to Wyndemere, a $71,225 first person fee, and a $15,000 second person fee.

¶ 10      On October 6, 2014, Centennial responded to the citation identifying a checking account titled in Packer's name with an account balance of $10,477.11 held by the bank along with a statement and checks evidencing payments made from that account after the citation was served on Centennial.

¶ 11    On October 20, 2014, American General responded it was holding $719,407.18 in a Single Premium Immediate Annuity (Annuity) purchased on July 28, 2014. The premium payment in the same amount was made on July 30, 2014 by wire transfer from an account held at Northern Trust Bank. The Annuity was purchased by the Kenneth F. Packer Trust 2014 DTD 7/26/14 and was owned by the Kenneth F. Packer Marital Trust 2014 DTD 7-26-14 of which Mark Langille (Langille) and Ryan Langille were named as co-trustees. The annuitant was identified as Paula, Packer's wife.

¶ 12                          Stay of Citation Proceedings

¶ 13    In a separate action, plaintiff filed a shareholders derivative lawsuit on behalf of The TPG and PEI against certain officers and directors of TPG including Packer, Charlotte Sartain, Warren Denniston, and David Packer. In the derivative lawsuit, plaintiff acted as a shareholder representative for the group. On October 15, 2014, defendants in this enforcement proceeding filed a motion to stay enforcement proceedings arguing "Plaintiff's attempt to collect on the judgment should be stayed pending a resolution of the derivative lawsuit[.]" The motion alleged a conflict of interests existed where plaintiff was seeking to collect assets also sought in the derivative lawsuit where plaintiff was acting as the shareholders' representative. On March 11, 2015, the trial court granted defendants' motion to stay.

¶ 14    The trial court and this court entered various subsequent orders confirming plaintiff's citation liens remained in place though his enforcement proceedings were stayed. Plaintiff filed an interlocutory appeal arguing the trial court erred in granting defendants' motion to stay enforcement of the judgment without requiring defendants to file an appeal bond and sought reversal of the March 11, 2015 stay order. *Id*. at ¶ 3. The derivative lawsuit with plaintiff acting

as the shareholders' representative was subsequently dismissed which judgment was affirmed by this court. See *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, ¶ 54. On May 5, 2017, the trial court in this enforcement proceeding entered an order granting plaintiff's request to resume his enforcement proceedings.

¶ 15                                Continuation of Citation Proceedings

¶ 16    Plaintiff subsequently re-noticed his motions for turnover order relative to the assets disclosed by American General, Centennial, and Wyndemere. The turnover motions were opposed by defendants. Packer's affidavit was attached to defendants' response to each motion for turnover order. In the affidavits, Packer alleged the disclosed assets belonged, at least in part, to his wife Paula who had not received notice of the citations or turnover motions and had no judgment against her. With respect to the assets identified by Wyndemere, Packer's affidavit stated in relevant part:

> "17. *** Eventually we settled on purchasing a condominium for Paula at Wyndemere in Wheaton, Illinois. The impetus to investigate and ultimately select Wyndemere came from Paula initially and I later chose to join her at Wyndemere. We own the facility together through tenancy by the entirety.
>
> * * * *
>
> 19. The purchase of the facility at Wyndemere was due solely to Paula's long term health condition. Initially Paula paid $250,000 for her unit. After that initial payment I decided to join Paula in that unit at a cost of an additional $15,000. My decision to join her there was due to my old age and my own deteriorating health.

Neither of these decisions had anything to do with this lawsuit or the judgment entered against me in this case.

20. As a result of Paula's health condition we also decided to set up a[n] irrevocable trust of which Paula is the sole beneficiary called the Kenneth F. Packer Marital Trust 2014 that was set up to purchase a qualified annuity under a retirement plan to care for Paula's long term health. The decision to establish this trust was due to Paula's deteriorating health condition a[n]d my advancing age and condition. This decision had nothing to do with the lawsuit or the judgment entered against me in this case."

¶ 17    As to the assets disclosed by Centennial, Packer's affidavit stated:

"22. Paula and I own a joint bank account at Centennial Bank in Marathon, Florida. This bank account contains deposits from social security payments made to Paula and I as well as other monies from Paula."

¶ 18    With respect to the assets disclosed by American General, Packer's affidavit stated:

"21. I have no ownership interest in any annuity with American General Life Insurance Co. That annuity was purchased to pay for Paula's escalating costs of care and for her to live at Wyndemere."

¶ 19    On August 24, 2017, after briefing and argument, the trial court ruled on plaintiff's motions for turnover order staying the motion against American General "pending the outcome of the evidentiary hearing with regard to [plaintiff's] fraudulent transfer claim" and staying the motions for turnover order against Centennial and Wyndemere "pending the outcome of the [fraudulent transfer claim] evidentiary hearing and the filing of Paula Packer's adverse claim."

¶ 20    On September 20, 2017, plaintiff filed a motion to bar Paula from intervening and filing an adverse claim in this case.  On November 14, 2017, a petition to intervene was filed by Paula and Mark and Ryan Langille, as co-trustees of the Marital Trust in which they alleged an ownership interest in the assets held by American General, Wyndemere, and Centennial and sought leave to assert this ownership interest in the supplementary proceedings.

¶ 21    On December 26, 2017, the trial court entered an order on plaintiff's motion to bar Paula from intervening or filing an adverse claim requiring Paula be given notice of the supplementary proceeding, leave to file her appearance as an intervenor in this action, and giving her an opportunity to file an adverse claim.  The order specifically states:

> "(a) Plaintiffs Motion to Bar Paula Packer from Intervening in this Case and Filing an Adverse Claim is GRANTED, in part, and DENIED, in part;  (b) Plaintiff must provide Paula Packer with a copy of this order as well as the Court's August 24, 2017 Memorandum Decision and Judgment within 14 days of this order's entry;  (c) Paula Packer is given 14 days from her receipt of these orders to file her appearance as an Intervenor; (d) Paula Packer is given 14 days from the date of her appearance to file an Adverse Claim; and (e) Paula Packer's failure to so file will bar her from Intervening in the future."

¶ 22    In accordance with the trial court's December 26, 2017 order, on January 9, 2018, Paula filed her appearance as intervenor along with the appearances of Langille and Ryan Langille as co-trustees of the Marital Trust.  Thereafter, on January 23, 2018, Paula and the co-trustees jointly filed a document entitled "Adverse Claim."  In their adverse claim, Paula and the co-trustees alleged Paula and the Marital Trust were never parties to this case, had no judgment

- 7 -

against them, and the assets sought by plaintiff from Wyndemere, American General, and

Centennial were owned by Paula and the Marital Trust. Based on this alleged ownership

interest, Paula and the co-trustees requested the trial court deny plaintiff's attempts to collect

these assets.

¶ 23 On February 14, 2018, plaintiff filed a motion to strike the adverse claim with prejudice

arguing the adverse claim was procedurally deficient in that the procedure for intervening had

not been followed and noting the petition itself was conclusory in nature. Plaintiff further argued

Packer had "manufactured one hurdle after another" to thwart plaintiff's efforts to collect on his

judgment including waiting until 2017 to suggest Paula had an interest in the property disclosed

in response to plaintiff's citations issued in 2014. Plaintiff also stated "[t]he [trial] court has

already ruled that if [Paula] fails to file an appropriate adverse claim she will be barred from

intervening in the future" apparently basing this claim on language in the trial court's December

26, 2017 Memorandum Decision and Judgment giving Paula 14 days to file her appearance and

adverse claim and stating Paula's failure to do so would bar her from intervening in the future.

¶ 24 On March 6, 2018, Paula and the co-trustees filed a response to plaintiff's motion

arguing, among other things, plaintiff's motion failed to include a citation to the statute under

which he was moving, however, presumed plaintiff's motion to strike was pursuant to section 2-

615 of the Code of Civil Procedure (Code), 735 ILCS 5/2-615 (West 2018). On March 20, 2018,

plaintiff filed a reply acknowledging the application of section 2-615 to his motion to strike and,

for the first time, also argued Paula and the co-trustee's petition to intervene was also

procedurally deficient. In a heading within the reply, plaintiff states "[Paula's] and Mr.

Langille's Intervention and Adverse Claim Are Deficient And Should Be Stricken with

Prejudice[;]" however, plaintiff also confirms in the reply that adverse claim is the subject of his motion to strike and, outside of the heading mentioned above, only specifically sought dismissal of the adverse claim not the petition to intervene. On August 16, 2018, the trial court granted plaintiff's motion to strike Paula and co-trustee's adverse claim, but also dismissed their petition to intervene finding the two pleadings contained only legal conclusions unsupported by specific factual allegations. Both the adverse claim and the petition to intervene were stricken with prejudice.

¶ 25    Thereafter, Packer, Paula, Langille, and Sartain (collectively "appellants") [1] appealed. This appeal followed.

¶ 26                                    ANALYSIS

¶ 27    On appeal, appellants argue the trial court erred (1) in striking adverse claimants' adverse claim, or alternatively, in striking the claim with prejudice; (2) in striking adverse claimants' petition to intervene; or in the alternative, in striking the petition with prejudice; and (3) in granting plaintiff's request to reopen supplemental proceedings.

¶ 28    We review *de novo* an order granting a motion to dismiss. *City of Chicago v. Comcast Cable Holdings, L.L.C.*, 231 Ill. 2d 399, 404 (2008). However, the trial court's decision whether to dismiss a complaint with prejudice "is a matter committed to the sound discretion of the circuit court" and thus reviewed for an abuse of discretion. *Fabian v. BGC Holdings, LP*, 2014

---

[1] On April 29, 2020, this court granted Sartain's motion to voluntarily dismiss her claims in this appeal and ordered this appeal proceed with respect to the remaining appellants and plaintiff. Accordingly, reference to appellants in this appeal excludes Sartain.

IL App (1st) 141576, ¶ 22; *Caulfield*, 2016 IL App (1st) 151558, ¶ 67. A trial court's decision with respect to a request to lift a stay is also reviewed for an abuse of discretion. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1005 (2008). A trial court abuses its discretion where its ruling is arbitrary, fanciful, or where no reasonable person would agree with the decision. *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 28. An abuse of discretion will also be found where the trial court applied the wrong legal standard. *Callinan v. Prisoner Review Board*, 371 Ill. App. 3d 272, 277 (2007).

¶ 29                    Dissolving of Stay in Supplementary Proceedings

¶ 30    We will first address appellants' argument the trial court abused its discretion when it dissolved the stay order to allow plaintiff to resume enforcement proceedings. Plaintiff argues this court has no jurisdiction to review the trial court's May 5, 2017 order lifting the stay because it was an interlocutory order under Illinois Supreme Court Rule 307(a), Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). Plaintiff argues under Rule 307 "the deadline for Appellants to file a notice of appeal from the circuit court's May 5, 2017 [order] expired 30 days after entry on June 4, 2017." We disagree.

¶ 31    Although the trial court's order dissolving the stay is an interlocutory order subject to appeal pursuant to Illinois Supreme Court Rule 307(a), such appeals are permissive, not mandatory as plaintiff's argument suggests. Thus, "the party has the option of waiting until after judgment has been entered to seek review of such interlocutory orders" where "Rule 307 plainly states that an appeal 'may' be taken to the appellate court from an interlocutory order of the circuit court" and "the word 'may' is generally regarded as indicating that action is permissive rather than mandatory." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11-12 (2001). Accordingly, this court

has jurisdiction to hear appellants' argument with respect to the trial court's May 5, 2017 order lifting the stay.

¶ 32    Turning to the merits of appellants' argument here, we disagree that the trial court abused its discretion in lifting the stay.

> "A trial court's authority to stay proceedings arises from its power to control the disposition of its cases.  [Citation.]  A court considers a number of factors when deciding whether to issue a stay, including the orderly administration of justice, judicial economy, comity; prevention of multiplicity; vexation and harassment; likelihood of obtaining complete relief in the foreign jurisdiction; and the res judicata effect of a foreign judgment in the local forum.  [Citations.]"  (Internal quotation marks omitted.)  *J.S.A.*, 384 Ill. App. 3d at 1005.

¶ 33    Appellants argue plaintiff, as a shareholder of TPG and filer of the derivative lawsuit, has a fiduciary duty to TPG and his fellow shareholders.  Appellants contend that plaintiff's attempt to recover for his own personal purposes assets which were also sought in the derivative lawsuit creates a conflict of interest and places plaintiff in breach of his fiduciary obligations such that he should be precluded from recovering these assets until the conflict is resolved.

¶ 34    With respect to the derivative lawsuit, appellants specifically argue that plaintiff was found to have a conflict of interests in the derivative lawsuit and is collaterally estopped from challenging those rulings.  However, the derivative lawsuit was dismissed and plaintiff was precluded from acting as the shareholders' representative.  See *Caulfield*, 2016 IL App (1st) 151558, ¶ 54.  Accordingly, we find no conflict exists here.  In the appeal of the derivative lawsuit, this court concluded only that plaintiff was not qualified to serve in a fiduciary capacity

as representative of the class of stockholders finding a conflict arose when judgment was entered in plaintiff's individual lawsuit which he sought to enforce against the same defendants. *Id*. at ¶¶ 51-54. As a result of this conflict, this court affirmed the trial court's dismissal of plaintiff's derivative lawsuit. *Id*. at ¶ 54. We note there is nothing in our decision in *Caulfield* precluding plaintiff from seeking enforcement of his individual judgment lawsuit. See *id*.

¶ 35 Appellants further argue, that even with the dismissal of plaintiff's derivative lawsuit, plaintiff continues to have a fiduciary duty to TPG because he remains a shareholder and, as such, the trial court's stay should not have been dissolved. We disagree. We note that "In Illinois, a shareholder may bring a derivative action and an individual claim at the same time if he suffered a different injury from his fellow shareholders." *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 371 (1994). "[A] shareholder who has a direct and personal interest in a cause of action may bring suit in an individual capacity even if the corporation's rights are also implicated." *Davis v. Dyson*, 387 Ill. App. 3d 676, 689 (2008).

¶ 36 We find the orderly administration of justice, judicial economy, comity; prevention of multiplicity; vexation and harassment all support the trial court's dissolving of its previously issued stay. See *J.S.A.*, 384 Ill. App. 3d at 1005.

¶ 37 For all these reasons, we find the trial court's order lifting the stay on plaintiff's enforcement proceedings was not an abuse of discretion.

¶ 38                    Section 2-615 Motion to Dismiss Adverse Claim

¶ 39 We next turn to appellants' arguments of error with respect to the trial court's granting of plaintiff's section 2-615 motion to dismiss Adverse Claimants' adverse claim.

1-18-1787)
1-19-0319) Cons.

¶ 40    Section 2-615 of the code allows for the dismissal of a complaint where the pleading is legally insufficient based on defects apparent on its face. 735 ILCS 5/2-615 (West 2018); *Bellik v. Bank of America*, 373 Ill. App. 3d 1059, 1062 (2007).

> "The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint *** are sufficient to state a cause of action upon which relief can be granted. [Citation.]  Illinois law requires a plaintiff to present a legally and factually sufficient complaint. [Citation.]  The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action." (Internal quotation marks omitted.)
>
> *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 438-39 (2005).

¶ 41    "In ruling on a section 2–615 motion, the court only considers (1) those facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record" and the grant of such a motion is subject to *de novo* review. *Reynolds v. John's Enterprise, LLC*, 2013 IL App (4th) 120139, ¶ 25.

¶ 42    "When reviewing the complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, and construe the allegations contained in the complaint in a light most favorable to the [party who brought the pleading for which dismissal is sought]." *Belik*, 373 Ill. App. 3d at 1062.  "However, conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted." *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930-31 (2004).

¶ 43    Because we construe the allegations in the light most favorable to the plaintiff [in this case, adverse claimants], "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006); see also *Schiller*, 357 Ill. App. 3d at 438-39 (holding "A trial court should dismiss a complaint with prejudice under section 2-615 of the Code only if it is clearly apparent that the plaintiffs can prove no set of facts that would entitle them to recover."); *Reynolds*, 2013 IL App (4th) 120139, ¶ 25.

¶ 44                    Failure to Specify Basis for Dismissal in Motion to Dismiss

¶ 45    Initially, we dispose of appellants' argument plaintiff's "motion [to strike] was defective on its face and should have been denied" because plaintiff did not cite to section 2-615 of the Code or specify that this was the basis on which he sought dismissal of the adverse claimants' claims. "When confronted with such an omission *** reviewing courts typically review the nondesignated motion according to its grounds, requests, or its treatment by the parties and the trial court." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). A litigant's failure to designate whether a motion to dismiss is pursuant to section 2-615 is not fatal where there is no prejudice to the nonmovant. *Id.*

¶ 46    We do not find plaintiff's failure to reference section 2-615 of the Code in the motion to strike fatal. The record is clear that all parties and the trial court understood plaintiff's motion to strike was pursuant to section 2-615 of the Code and the motion was addressed consistent with that understanding. In adverse claimants' response to plaintiff's motion to strike, it was argued plaintiff failed to cite the rule of civil procedure under which the motion was brought, however, adverse claimants acknowledged that "Presumably, Plaintiff's motion is brought under 735 ILCS

- 14 -

5/2-615" and goes on to argue why the motion pursuant to section 2-615 of the Code should be denied. In his reply, plaintiff references this acknowledgment and does not dispute the motion was rooted in section 2-615 of the Code. Further, the trial court's August 14, 2018 order granted plaintiff's motion to strike on the basis that the motion to intervene and adverse claims were legally insufficient under section 2-615 of the Code concluding the pleadings were comprised of conclusions which alleged no supporting facts. Accordingly, because the parties and the court both understood and litigated the motion to Strike as brought under section 2-615 of the Code, we find no prejudice to appellants and decline their request to find error on this basis. See *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994) (treating an improperly designated motion to dismiss as if it were properly filed pursuant to section 2-615 of the Code where the party seeking dismissal was not prejudiced and proceeding in this fashion would serve the interests of judicial economy); see also *Illinois Graphics Co.*, 159 Ill. 2d at 484.

¶ 47                              Dismissal of Adverse Claim with Prejudice

¶ 48    Our analysis as to whether the trial court erred in dismissing adverse claimants' adverse claims requires an examination of supplementary proceedings and the process by which an adverse claim may be made with respect to assets sought by a judgment creditor against a judgment debtor.

¶ 49    Section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2014)) governs such supplementary proceedings and allows for citations to discover assets whereby "a judgment creditor may proceed against the judgment debtor or third parties to discover and recover the judgment debtor's assets for purposes of applying property in satisfaction of the judgment." *Bloink v. Olson*, 265 Ill. App. 3d 711, 714 (1994). In such supplementary proceedings, when it

appears the property involved is subject to the claim of a third person, notice to that person is mandatory and the courts must permit the other person to appear and maintain their right. *Garvey v. Parrish*, 84 Ill. App. 3d 578, 581-82 (1980). To that end, section 2-1402(g) of the Code provides:

> "If it appears that any property, chose in action, credit or effect discovered, or any interest therein, is claimed by any person, the court shall, as in garnishment proceedings, permit or require the claimant to appear and maintain his or her right. The rights of the person cited and the rights of any adverse claimant shall be asserted and determined pursuant to the law relating to garnishment proceedings." 735 ILCS 5/2-1402(g) (West 2014).

¶ 50    "Section 12-710 of the Code, which relates to garnishment proceedings, provides that the adverse claimant's rights 'shall be tried and determined with other issues in the garnishment action.' " *Bloink*, 265 Ill. App. 3d at 717. Section 12-710 of the Code specifically states:

> "(a) In the event any indebtedness or other property due from or in the possession of a garnishee is claimed by any other person, the court shall permit the claimant to appear and maintain his or her claim. A claimant not voluntarily appearing shall be served with notice as the court shall direct. If a claimant fails to appear after being served with notice in the manner directed, he or she shall be included by the judgment entered in the garnishment proceeding.
>
> (b) If the adverse claimant appears and, within the time the court allows, files his or her claim and serves a copy thereof upon the judgment creditor, the judgment debtor, and the garnishee, he or she is then a party to the garnishment proceeding;

and his or her claim shall be tried and determined with the other issues in the garnishment action. *** If the adverse claimant is entitled to all or part of the indebtedness or other property, the court shall enter judgment in accordance with the interests of the parties.

(c) Claims for the support of a spouse or dependent children shall be superior to all other claims for garnishment of property." 735 ILCS 5/12-710 (West 2014).

¶ 51 "It is well settled that when, either by *** answer or otherwise, it appears that the property involved is subject to adverse claims, a notice to the claimants is mandatory[,]" *In re Marriage of Souleles*, 111 Ill. App. 3d 865, 872 (1982), and "it is the duty of the court to permit the [claimant] to appear and maintain his right." *B.J. Lind & Co. v. Diacou*, 3 Ill. App. 3d 299, 302 (1971). "Until this is done, a valid *** judgment cannot be entered in favor of a judgment creditor." *Id.*

¶ 52 Paula and the co-trustees' jointly filed adverse claim consists of four paragraphs containing the following allegations: (1) that "Plaintiff has sought to obtain assets owned by Paula and the Trust" by filing "motions for turnover as to American General Life Insurance Company, Wyndemere Luxury Senior Living Co and Centennial Bank[;]" (2) that the trial court's August 25, 2017 order "noted the interests of Paula and the Trust with respect to [plaintiff's motions for turnover of property held by American General, Wyndemere, and Centennial;]" and (3) that they "submit their Adverse Claim to protect their interest in their assets." Although the petition states the claim is being filed to assert their interests in the property at issue, the petition contains no non-conclusory statements with respect to Paula and the trust's ownership interest in the property. See *Village of South Elgin*, 348 Ill. App. 3d at 930-

31 (Conclusory allegations of fact or law not supported by allegations of specific facts will not be admitted.); see also *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 21 (stating "Illinois is a fact-pleading state" and thus, while a pleader is not required to set out his evidence, the ultimate facts to be proven which state a cause of action should be alleged).

¶ 53 Appellants argue the adverse claim referred to the trial court's order with respect to plaintiff's motions for turnover order "which specifically cited the evidence submitted by Dr. Packer in response to those motions relating to Paula and the Marital Trust's interests in those assets, which the trial court ruled required an evidentiary hearing." However, as plaintiff points out, the adverse claim does not specifically incorporate any prior pleading or order as would be required by section 606 of the Code. See 735 ILCS 6/2-606 (West 2016) (stating "If a claim *** is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein[.]").

¶ 54 Though we find from the record Paula and the co-trustees' appear to have an ownership claim in the property at issue, we cannot say the adverse claim filed is legally sufficient because it is devoid of any well-plead facts on the face of the pleading that, if proven, would entitle them to relief. Accordingly, we affirm the trial court's order granting plaintiff's motion to dismiss Paula and the co-trustees' adverse claim pursuant to section 2-615 of the Code.

¶ 55 While we affirm the trial court's dismissal of the adverse claim finding it to be legally insufficient we note Illinois courts have consistently held a complaint should be dismissed with prejudice under section 2-615 of the Code only where it is clearly apparent no set of fact could be proved that would entitled them to recovery. See *Marshall*, 222 Ill. 2d at 430; *Schiller*, 357

Ill. App. 3d at 438-39; *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. We find this not to be the case here.

¶ 56    When considering this issue we review the facts apparent from the face of the pleading, matters subject to judicial notice, and judicial admissions in this record,

¶ 57    The petition to intervene filed by adverse claimants on November 17, 2017 alleges adverse claimants have an interest in property held by American General, Wyndemere, and Centennial. In addition, the response to the citations filed by Packer alleged Paula and the martial trust owned an interest in the property.

¶ 58    Despite requesting an opportunity to file an amended complaint as alternative relief in their response to plaintiff's motion to strike, Paula and the co-trustees were given no opportunity to cure the defect as is ordinarily the case before a pleading is dismissed with prejudice. See *Belik*, 373 Ill. App. 3d at 1065; see also *Fabian*, 2014 IL App (1st) 141576, ¶ 22. Based on record before us we believe no reasonable judge would find adverse claimants cannot plead facts that, if proved, would show they have an interest in the property and therefore deny them an opportunity to replead. See *Marshall*, 222 Ill. 2d at 430; *Schiller*, 357 Ill. App. 3d at 438-39; *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Therefore, we find the trial court erred when it failed to allow adverse claimants to file an amended adverse claim.

¶ 59    We note plaintiff's augment in his motion to strike filed in the trial court and reiterated in his appellate brief, alleging Paula was on notice she had only one opportunity to file a correct pleading. We also note the trial court adopted plaintiff's allegation Paula would only be given one opportunity to file a claim in the court order granting plaintiff's motion to dismiss.

However, plaintiff's allegation Paula was warned there would only be one opportunity to plead is belied by the record—there is no such admonition in the order.

¶ 60     We are cognizant of plaintiff's frustration with the time it has taken for him to collect on his judgment having commenced this supplementary proceeding in 2014.  However, the fact remains Paula and the Martial Trust were not provided proper notice of the third-party citation responses identifying property in which she and the co-trustees of the Marital Trust now claim an interest until late 2017 whereupon they filed their appearance and an adverse claim in accordance with the trial court's directive.

¶ 61     In view of this record, we find no reasonable judge would deny adverse claimants at least one opportunity to replead.  Therefore, we find the trial court abused its discretion when it denied the opportunity to replead and dismissed their claims with prejudice.  Accordingly, we remand this matter back to the trial court so Paula and the co-trustees may be given an opportunity to replead their adverse claim.

¶ 62                                    Intervention

¶ 63     We also find the trial court erred in dismissing with prejudice adverse claimants' appearance as intervenors.  Section 2-408 of the Code allows for the timely intervention in a proceeding by interested parties and prescribes the procedure for filing such a petition requiring the petition to set forth the grounds for intervention which must be accompanied by the pleading they intend to file.  735 ILCS 5/2-408 (West 2016).  Section 2-1402(g) of the Code directs the court *to permit or require a person who appears to have claim to the property at issue* to appear in the proceeding and maintain their right to that property.  See 735 ILCS 5/2-1402(g) (West 2016).

¶ 64    The trial court, in its August 24, 2017 order, specifically gave Paula leave to file her appearance as an intervenor in this case.  The trial court stayed plaintiff's motion for a turnover order as to Centennial and Wyndemere, in part, to allow for "the filing of Paula Packer's adverse claims."   On December 26, 2017, after concluding Paula had not been provided notice of the proceedings, the trial court ordered plaintiff to provide Paula a copy of its August 24, 2017 order as well as its December 26, 2017 order and further ruled:

> "(c) Paula Packer is given 14 days from her receipt of these orders to file her appearance as an Intervenor; (d) Paula Packer is given 14 days from the date of her appearance to file an Adverse Claim; and (e) Paula Packer's failure to so file will bar her from Intervening in the future."

¶ 65    Pursuant to the trial court's December 26, 2017 order, Paula entered her appearance as an intervenor and subsequently filed her adverse claim all within the timeframe allotted by the trial court's order.  Neither party has contested the trial court's orders of August 24, 2017 or December 26, 2017 to the extent they permitted Paula to file her appearance as an intervenor and further allowed for the filing of her adverse claim to the property at issue.  While the trial court is correct when it stated in its subsequent August 14, 2018 order that Paula and Langille's petition to intervene had not been ruled on, the trial court's prior orders clearly allowed for Paula's appearance to be filed as an intervenor thus obviating the need for any ruling on the petition to intervene prior to her appearance.  We also point out plaintiff never filed a motion to strike Paula and the co-trustees' appearance as intervenors—only their adverse claim.  Nevertheless, the trial court *sua sponte* struck their appearances as intervenors.  Accordingly, we review the trial court's dismissal of the appearances *de novo* rather than for an abuse of discretion as appellants

argue. See *City of Chicago*, 231 Ill. 2d at 404; see also *Bellik*, 373 Ill. App. 3d at 1065. Our

decision here turns on an issue of statutory interpretation, namely sections section 2-1402(g) and

12-710 of the Code which also requires a *de novo* review. See *Hadley v. Illinois Department of*

*Corrections*, 224 Ill. 2d 365, 372 (2007) (requiring *de novo* review where the issue on review

depends on statutory interpretation). To that end, we note,

> "[O]ur duty is to ascertain and give effect to the intent of the legislature.
> [Citation.] The best evidence of the legislature's intent is the language of the
> statute, which must be given its plain and ordinary meaning. [Citations.] Where
> the statutory language is clear, it will be given effect without resort to other aids
> of construction. [Citations.]" *Id*. at 371.

¶ 66    Sections 2-1402(g) of the Code states that "If it appears that any property *** is claimed

by any person, the court shall, *** permit or require the claimant to appear and maintain his or

her right[.]" 735 ILCS 5/2-1402(g) (West 2014). Section 12-710(a) of the Code states that "In

the event *** property due from or in the possession of a garnishee is claimed by any other

person, the court shall permit the claimant to appear and maintain his or her claim." 735 ILCS

5/12-710(a) (West 2014). Section 12-710(b) of the Code states that "If the adverse claimant

appears and, within the time the court allows, files his or her claim and serves a copy thereof

upon the judgment creditor, the judgment debtor, and the garnishee, he or she is then a party to

the garnishment proceeding; and his or her claim shall be tried and determined with the other

issues in the garnishment action." 735 ILCS 5/12-710(b) (West 2014)); see also *B.J. Lind & Co.*,

3 Ill. App. 3d at 301-02 ("When either by answer of the garnishee or otherwise, it appears that

the property involved is subject to the claim of another person, *** it is the duty of the court to

permit the other person to appear and maintain [their right]" and "[u]ntil this is done, a valid garnishment judgment cannot be entered in favor of a judgment creditor.").

¶ 67    While we agree with the trial court that the adverse claim filed in conjunction with the appearance as intervenors did not comport with the requirements of section 2-408(e) of the Code and lacked sufficient supporting factual allegations, we find the trial court, pursuant to section 2-1402(g) and 12-710 of the Code, nevertheless had a mandatory and independent obligation to permit adverse claimants' appearances.

¶ 68    Based on the record here, both Paula and Langille as a co-trustee of the Marital Trust do appear to have a claim to the property at issue and, upon receiving notice of the proceedings, filed their appearance and adverse claim within the timeframe allotted by the trial court's December 26, 2017 order.

¶ 69    The third-party citation response from Centennial includes checks with Paula's name on them which are also endorsed by her.  The third-party citation response from American General noted Paula was the annuitant of the Annuity and the Marital Trust was the owner and responsive documents to the citation further indicate Mark and Ryan Langille are co-trustees of the Marital Trust.  The third-party citation response from Wyndemere included a residence agreement and loan agreement signed by both Paula and Packer.

¶ 70    Furthermore, Packer, in his affidavit, alleged Wyndemere was a jointly held asset for which Paula paid $250,000.  He alleged the Centennial bank account was a joint account which included monies deposited by Paula.  Packer further argued the annuity held by American General was purchased to pay for Paula's care.

¶ 71    Additionally, the trial court, in its August 24, 2017 order, specifically noted both Paula and the Marital Trust's apparent interest in the assets disclosed in the third-party citation responses.  As to Paula and the Marital Trust's interest in the Annuity held by American General the trial court stated:

> "Packer also contends that because Packer's wife, Paula, is the annuitant of the SPIA, [Single Premium Immediate Annuity] this Court cannot order American General to turn over the funds without Koehler first providing notice to Paula. Exhibit B to Koehler's Motion is the annuity application for the subject SPIA. This lists the Kenneth F. Packer Marital Trust 2014 as both the owner and purchaser of the SPIA.  As §1402 only allows courts to order third parties to turn over assets to creditors when the debtor himself is either the owner of the assets or could otherwise demand turnover to himself, the Court is not permitted to order turnover of the SPIA in the instant case.  As Packer is neither the annuitant, owner, or purchaser of the SPIA, it appears that he has no ownership interest in the SPIA."

¶ 72    As to Paula's interest in the bank account at Centennial, while rejecting Packer's arguments Paula's interest in the account precluded a turnover order, the trial court nevertheless stated:

> "[Paula] may also intervene with respect to the funds in the Centennial bank account so that she may state her adverse claim if she chooses.  She has the right to do so and holds the burden of proving that she has an entitlement to certain of these funds.  *See B. Jr. Lind & Co. v. Diacou,* 3 Ill. App. 3d 299, 301-02 (1st Dist.

1971) ('When, either by answer of the garnishee or otherwise, it appears that the property involved is subject to the claim of another person, notice to that person is mandatory; and it is the duty of the court to permit the other person to appear and maintain his right')."

¶ 73    Finally, as to Paula's interest in the assets disclosed by Wyndemere, the trial court stated:

"However, even though these funds may be subject to turnover, Packer's wife, Paula Packer, must be given the opportunity to intervene as an adverse claimant and make her claim to her portion of the funds. The Court in *B. J. Lind & Co. v. Diacou*, 3 Ill. App. 3d 299 (1st Dist. 1971) stated that:

When, either by answer of the garnishee or otherwise, it appears that the property involved is subject to the claim of another person, notice to that person is mandatory; and it is the duty of the court to permit the other person to appear and maintain his right. Until this is done, a valid garnishment judgment cannot be entered in favor of a judgment creditor.

*Id.* at 301-02. Accordingly, the Court cannot order Wyndemere to turn over the funds at issue at this time. Paula Packer should be given leave to intervene and file an adverse claim."

¶ 74    Because the record is clear Paula and the co-trustees of the Marital Trust appear to have a claim to the property at issue in this supplementary proceeding and appeared and asserted that claim within the time frame allotted by the trial court, we find the trial court had an independent and mandatory obligation to permit and require their appearance as intervenors so they may assert their claims. Accordingly, adverse claimants' appearances should not have been stricken.

1-18-1787)
1-19-0319) Cons.

¶ 75                                    CONCLUSION

¶ 76    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part. We affirm the trial court's May 5, 2017 order lifting its previously issued stay. We affirm the trial court's order dismissing adverse claimants' adverse claim but reverse the trial court's decision to dismiss the claim with prejudice. We reverse the trial court's order striking with prejudice adverse claimants' appearance as intervenors. We remand for further proceedings consistent with this order.

¶ 77    Affirmed in part and reversed in part.